**Alfred OCHOA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–09–00189–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 2, 2010.

Discretionary Review Refused
May 25, 2011.

Winston E. Cochran Jr., Houston, TX, for Appellant.

Michelle Ruth Townsend, Assistant District Attorney, Patricia R. Lykos, Harris County District Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, ALCALA, and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

Appellant, Alfred Ochoa, appeals from a judgment convicting him of felony assault involving dating violence as a second offender. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(A) (second assault involving dating violence is third-degree felony) (Vernon Supp.2010). In four issues, appellant contends that the evidence is legally and factually insufficient to support his conviction, that section 22.01(b)(2) of the Texas Penal Code, which elevates mis-

demeanor assault to a third-degree felony, violates the United States and Texas Constitutions, and that he was ineffectively assisted by his trial counsel. We conclude that the evidence is sufficient, the statute meets the requirements of the United States Constitution, appellant waived his challenge based on the Texas Constitution, and appellant failed to establish that he received ineffective assistance of trial counsel. We affirm.

## Background

In 2007, William Crump and appellant met at a local bar, which they frequented. There, they would occasionally socialize, play pool, drink, and talk. After approximately three years of platonic friendship, Crump and appellant began having sexual relations. At the time, Crump had two other roommates who resided together in one of the two bedrooms in Crump's house.

For nine days, appellant resided at Crump's house, and the two slept together in Crump's bed. Crump regarded appellant as his boyfriend, and they had sex on multiple occasions. Crump testified that he considered their relationship to have been of a "sexual" nature as opposed to of a "romantic" nature. However, they did socialize together by frequenting bars where their friends and associates treated appellant as Crump's boyfriend.

On the last day that he resided at Crump's house, appellant loaned Crump $20. That night, after consuming alcohol with Crump at Crump's house, appellant asked for the $20 back so that he could go and purchase some crack cocaine. Crump refused. He told appellant that he was "done" with him. Crump, being too inebriated to drive, offered to walk appellant to the bus stop.

Halfway there, appellant, demanding the return of the $20, began to hit and kick

Crump. Crump fell into a ditch as appellant continued the attack. Crump did not fight back. A fire marshal who happened to be driving by stopped to assist Crump. The marshal got a good look at appellant before he fled. When the police arrived, Crump was bleeding from his nose and mouth, and his eyes were swollen. Crump testified that his relationship with appellant ended that night. The next day, appellant came to Crump's house to apologize. Crump's roommate called the police, and an officer arrested appellant.

The indictment charged appellant with intentionally and knowingly causing bodily injury to Crump, a person with whom appellant had a dating relationship, by striking Crump with his hand. Appellant pleaded not guilty and proceeded to a jury trial. After the jury found him guilty, appellant stipulated to two enhancement paragraphs and, pursuant to an agreement between the parties, the court assessed his sentence to be twenty-five years confinement in prison.

In his motion for a new trial, appellant requested that the trial court reform the judgment to show a conviction for a Class A misdemeanor assault and to conduct a new punishment hearing "due to the unconstitutionality of a statute underlying the present felony conviction." Specifically, appellant contends that the statute is impermissibly vague in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Nothing in his motion for a new trial suggests that appellant was challenging the statute on the ground that it violated the Texas Constitution. The trial court denied appellant's motion for new trial.

### Sufficiency of the Evidence

In his first issue, appellant contends that the evidence is insufficient to sustain his conviction for felony assault involving dating violence as a second offender. Specifically, appellant challenges the proof that a "dating relationship" existed between him and Crump. Appellant, however, does not challenge the legal or factual sufficiency of the evidence to support a finding that he and Crump had an intimate, sexual relationship. Rather, appellant's argument turns solely on a question of law: whether the statutory term "dating relationship," properly construed, unambiguously encompasses same-sex relationships.

### A. Applicable Law

#### 1. Standard of Review

Under the *Jackson* standard of review, evidence is insufficient if, considering the entire trial record, no rational fact finder could have found each element of offense proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App.2007). "If the evidence establishes precisely what the State has alleged, but the acts that the State has alleged do not constitute a criminal offense ... then that evidence, as a matter of law, cannot support a conviction." *Williams,* 235 S.W.3d at 750.

An appellate court reviews de novo a trial court's determination of a question of law. *Williams v. State,* 253 S.W.3d 673, 677 (Tex.Crim.App.2008). Statutory construction is a question of law. *Ramos v. State,* 303 S.W.3d 302, 306 (Tex.Crim.App. 2009). Therefore, an appellate court reviews, de novo, questions of statutory construction. *Mahaffey v. State,* 316 S.W.3d 633, 637 (Tex.Crim.App.2010).

#### 2. Statutory Construction

When construing a statutory provision, a court must seek to effectuate the "collective" intent or purpose of the legis-

lators who enacted the statute. *See id.* (citing *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991) (citing Tex. Const. art. II, § 1) (Texas Constitution assigns law-making function to Legislature, law-interpreting function to judiciary)). In identifying that intent, a court attempts to discern the fair, objective meaning of the literal text of the statutory provision at the time of its enactment. *See Mahaffey,* 316 S.W.3d at 637 (citing *Boykin,* 818 S.W.2d at 785 (literal text is only definitive evidence of what legislators had in mind)). In discerning that meaning, a court uses the established canons of statutory construction. *See Williams,* 253 S.W.3d at 677; *Boykin,* 818 S.W.2d at 785. A court must give effect to the plain meaning of the statutory text unless that meaning is ambiguous or the application of that meaning would lead to absurd consequences that the Legislature could not have intended. *See Mahaffey,* 316 S.W.3d at 638; *Boykin,* 818 S.W.2d at 785. A court construes the plain meaning of a statutory term consistent with its meaning in common usage unless the term is defined by statute or has acquired a technical meaning. *See Mahaffey,* 316 S.W.3d at 638. In discerning a term's meaning in common usage, a court may consult standard dictionaries. *See Ramos,* 303 S.W.3d at 306.

### 3. Law Applicable to Felony Assault Involving Dating Violence

A person commits criminal assault if he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1). Assault is a third-degree felony if the perpetrator was in, or had been previously in, a "dating relationship" with the victim and the person had been previously convicted of an offense involving dating violence. Tex. Penal Code Ann. § 22.01(b)(2); Tex. Fam. Code Ann. § 71.0021(b) (Vernon 2008). A

"dating relationship" is a continuing relationship, between individuals, of a romantic or intimate nature. Tex. Fam. Code Ann. § 71.0021(b). Neither the term "romantic" nor the term "intimate" is defined by statute. The existence of such a relationship is determined by considering: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship. *Id.* "A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a dating relationship." *Id.* § 71.0021(c). Appellant does not challenge the proof to establish these three criteria, but instead focuses on whether, as a matter of law, a "dating relationship" can exists between individuals of the same sex.

### B. Analysis

#### 1. Ambiguity in Applicability to Same–Sex Relationships

█ Appellant contends that the term "dating relationship" is ambiguous as to whether it applies to same-sex relationships. He asserts that, under the rule of lenity, this ambiguity must be resolved in his favor.

Whether the statutory term "dating relationship" is ambiguous concerning its applicability to same-sex relationships is a question of first impression. The statutory text plainly applies to "a relationship between individuals." Tex. Fam. Code Ann. § 71.0021(b). The existence of a dating relationship is to be evaluated by considering the interactions "between the persons involved[.]" *Id.* By referring to individuals and persons, the statute does not distinguish between relationships between individuals of the same sex and relationships between individuals of the opposite sex. *See In re Marriage of J.B. & H.B.,* 326 S.W.3d 654, 673 (Tex.App.-Dallas 2010, no

pet.) (interpreting statutory term "dating relationship" to be "without regard to the sex of the members of the relationship"). While the statute does not explicitly state that it applies equally to same- and opposite-sex relationships, nothing in the statutory text suggests that its applicability to same-sex relationship is ambiguous. *See Ford v. State*, 305 S.W.3d 530, 536–37 (Tex.Crim.App.2009) (quoting *Boykin*, 818 S.W.2d at 785 ("Where the statute is clear and unambiguous ... it is not for the courts to add or subtract from such a statute.")).

■ The rule of lenity seeks to ensure fair warning that conduct has been criminalized by resolving any ambiguity in a criminal statute so that it applies only to conduct clearly covered. *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997). The rule of lenity is another name for "the canon of strict construction of criminal statutes." *See id.* Unlike the rule of lenity, which strictly construes criminal statutes, the Texas Penal Code does not require its provisions to be strictly construed. *See* Tex. Penal Code Ann. § 1.05(a) (Vernon 2003) ("The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code.").[1] Assuming the rule of lenity applies, it is "another extratextual factor for a court to consider if, and only if, a statute is ambiguous." *Cuellar v. State*, 70 S.W.3d 815, 819 n. 6 (Tex.Crim.App.2002) (writing in dicta); *see Ex parte Forward*, 258 S.W.3d 151, 154 n.

19 (Tex.Crim.App.2008) ("Even if the 'rule of lenity' applies ..., it provides the rule of decision only when both alternative choices or definitions are more-or-less equally reasonable.") (internal quotations omitted). Finding that the statute is unambiguous, we do not reach the question of whether the rule of lenity applies.

## 2. Absurdity Resulting from Application to Same–Sex Relationships

Appellant contends that the Texas Legislature did not intend for the term "dating relationship" to encompass intimate, same-sex relationships because, at the time of enactment, "deviate sexual intercourse with another individual of the same sex" was a criminal offense. Tex. Penal Code Ann. § 21.06 (Vernon 2003) (effective January 1, 1974), *invalidated by Lawrence v. Texas*, 539 U.S. 558, 578, 123 S.Ct. 2472, 2484, 156 L.Ed.2d 508 (2003) (unconstitutional as applied to private sexual conduct between consenting adults); *see* Tex Fam. Code § 71.0021(b) (enacted September 1, 2001). Appellant claims that interpreting the term "dating relationship" to encompass same-sex relationships would have led to an absurd result. Specifically, appellant asserts it would have meant that the Legislature provided special protection for partners in same-sex relationships at the same time that same-sex intercourse was illegal.

The two statutes are not directly in conflict. *See Dornbusch v. State*, 156 S.W.3d 859, 870–71 (Tex.App.-Corpus Christi 2005,

1. The Court of Criminal Appeals has never decided whether the rule of lenity applies to Texas Penal Code. The court, however, did cast doubt on the rule of lenity's applicability to the Texas Code of Criminal Procedure. *Ex parte Forward*, 258 S.W.3d 151, 154 n. 19 (Tex.Crim.App.2008). The rule of construction provided in the Texas Code of Criminal Procedure is more strongly worded than is its

counterpart in the Texas Penal Code. *Id.* (citing Tex.Code Crim. Proc. Ann. art. 1.26 (Vernon 2005) ("The provisions of this Code shall be liberally construed....")). The Court of Criminal Appeals has stated, "Arguably this provision overrides the 'rule of lenity' " with respect to the Texas Code of Criminal Procedure. *Id.*

pet. ref'd) (two separately defined offenses need not be considered together in looking for absurd result where provisions are not in direct conflict). Although the Texas Penal Code had criminalized sexual intercourse with the same sex when this statute was enacted, the Legislature could have reasonably determined that people in these relationships, whether legal at the time or not, needed special protection from an abuser. Furthermore, as acknowledged by appellant's counsel at oral argument, a "dating relationship" between individuals of a romantic or intimate nature need not include sexual intercourse. The Texas Penal Code has never prohibited a dating relationship between people of the same sex; rather, it disallowed "deviate sexual intercourse." *See* TEX. PENAL CODE ANN. § 21.06. Because "dating relationships" do not necessarily include sexual intercourse, there is no conflict between the Legislature's criminalization of "deviate sexual intercourse" and its protection of persons in same-sex dating relationships from domestic violence.

In contrast to relationships such as casual acquaintanceships or ordinary fraternizations, dating relationships pose a greater danger of one party repeatedly abusing the other. *See* TEX. FAM.CODE ANN. § 71.0021(c); Devon M. Largio, *Refining the Meaning and Application of "Dating Relationship" Language in Domestic Violence Statutes*, 60 VAND. L.REV. 939, 950 (2007) (describing dating violence as repeating cycle of tension-building, explosion, and honeymoon phases). It was not absurd for the Legislature to protect a person involved in a same-sex dating relationship from that heightened danger. We conclude that the statutory term "dating

relationship" plainly and unambiguously applies to both same- and opposite-sex relationships. *See Mahaffey*, 316 S.W.3d at 638.

We overrule appellant's first issue.

### Federal Constitutionality

In his second issue, appellant contends that the statute elevating assault to a third-degree felony violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *See* U.S. CONST. amend. XIV, § 1.[2] Specifically, appellant presents a facial attack to the statute, asserting that it is unconstitutionally vague.

An appellate court, in reviewing the constitutionality of a statute, begins with a rebuttable presumption that the statute is constitutional. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex.Crim.App. 2002). A statute is unconstitutionally vague if: (1) the statute fails to provide fair notice such that a person of ordinary intelligence would have a reasonable opportunity to know conduct is prohibited; or (2) the statute fails to establish determinate guidelines for law enforcement thereby permitting arbitrary and discriminatory enforcement. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex.Crim.App.2006); *Long v. State*, 931 S.W.2d 285, 287 (Tex.Crim.App.1996). A court views statutory language challenged as impermissibly vague in accordance with common understanding and practices. *Mays v. State*, 318 S.W.3d 368, 389 n. 77 (Tex.Crim.App.2010) (citing *Ely v. State*, 582 S.W.2d 416, 419 (Tex.Crim.App.1979)).

---

2. Appellant's motion for new trial was sufficient to preserve for appellate consideration his unconstitutional-vagueness facial challenge. *See Gillenwaters v. State*, 205 S.W.3d 534, 537–38 (Tex.Crim.App.2006) (motion for new trial sufficient to preserve unconstitutional-vagueness as-applied challenge).

■ A facial vagueness challenge to the constitutionality of a statute that does not implicate constitutionally protected speech will be sustained only if the statute is impermissibly vague in all its applications. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); *Holcombe,* 187 S.W.3d at 499. Before a court may reach the question of whether a statute is impermissibly vague in all its applications, an appellant must show that the statute was unconstitutional as applied to him. *Maloney v. State,* 294 S.W.3d 613, 629 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd).

■ Appellant contends that the statute is unconstitutionally vague in two ways. First, appellant asserts that the statute is unconstitutionally vague in that it fails to give fair notice that a same-sex relationship can constitute a dating relationship. This contention, however, misapprehends the definition of vagueness. A provision is vague if it has an uncertain breadth of meaning. *See Black's Law Dictionary* 1689 (9th ed.2009) ("vagueness"). Having already determined in appellant's first issue that the statute plainly and unambiguously applies to same-sex as well as opposite-sex relationships, we determine the term "dating relationship" is not unconstitutionally vague in its applicability to same-sex relationships.

■ Second, appellant asserts that the statute is unconstitutionally vague in that it is unclear what constitutes a "dating relationship," regardless of the sex of the participants. Although a "dating relationship" is defined by the statute as a continuous relationship of a romantic or intimate nature, neither the term "romantic" nor the term "intimate" is defined by statute. *See* TEX. FAM.CODE ANN. § 71.0021(b). The statute further provides that the existence of a dating relationship is to be determined by considering the relationship's length, nature, and frequency and type of interactions. *Id.*

While it may be possible that there are certain relationships for which it would be uncertain whether they constitute a dating relationship under the statute, appellant must first establish that the statute was uncertain as applied to him. *See Maloney,* 294 S.W.3d at 629. In accordance with common understanding and practice, appellant's relationship with Crump is clearly covered by the statute. *See Mays,* 318 S.W.3d at 389 n. 77. Appellant and Crump cohabitated for the length of their relationship, they shared the same bed, they frequently had sex, and they were known by others to be a couple.

Additionally, the assault is the conduct of which a defendant needs notice, not the status of the actor's relationship to the victim. *Childress v. State,* 285 S.W.3d 544, 552 (Tex.App.-Waco 2009, pet. ref'd); *see Scott v. State,* 322 S.W.3d 662, 665 n. 3 (Tex.Crim.App.2010). It is not a crime to be in a dating relationship, and appellant's conduct would have been criminal had he punched and kicked a stranger. *See id.* Similarly, law enforcement would have known to arrest appellant even had Crump been a stranger to him. *See id.* Here, the fire marshal who saw the assault in progress knew to intervene to help Crump even without knowing that appellant and Crump had been dating.

We conclude that the statute is not unconstitutionally vague because it provides fair notice for an ordinary person to have a reasonable opportunity to know that the conduct is prohibited, and because it establishes determinate guidelines for law enforcement thereby avoiding arbitrary or discriminatory enforcement. We hold that the statute does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See*

*Rodriguez,* 93 S.W.3d at 69; *Long,* 931 S.W.2d at 287.

Appellant's second issue is overruled.

### Texas Constitutionality

In his third issue, appellant contends that the statute elevating assault to a third-degree felony violates section nineteen of article one of the Texas Constitution. *See* TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law.").

■■■ To assert an issue on appeal, an appellant's "brief must contain a clear and concise argument for the contention made, with appropriate citations to authorities...." TEX.R.APP. P. 38.1(i). When making "a novel argument for which there is no authority directly on point ..., [an] appellant must ground his contention in analogous case law or provide the [appellate court] with the relevant jurisprudential framework for evaluating his claim." *Tong v. State,* 25 S.W.3d 707, 710 (Tex. Crim.App.2000). An appellant waives an issue on appeal if he fails to adequately brief that issue by presenting supporting arguments and authorities. *See* TEX. R.APP. P. 38.1(i); *Cardenas v. State,* 30 S.W.3d 384, 393 (Tex.Crim.App.2000).

Appellant notes that a state is permitted to provide greater protection from its own government's actions than it is required to provide under the federal law. *See Heitman v. State,* 815 S.W.2d 681, 682–83 (Tex. Crim.App.1991) ("Under our system of federalism ... states are free to reject federal holdings as long as state action does not fall below the minimum standards provided by federal constitutional protections. Likewise, a state is free as a matter of its own law to impose greater restrictions on police activity than those the Supreme Court holds to be necessary upon federal constitutional standards.") (citations omitted). Appellant, however, does not cite any authority interpreting section nineteen to provide greater protection than does the Due Process Clause of the Fourteenth Amendment. Moreover, appellant does not assert any reasons why the Texas Constitution should be interpreted to provide greater protection. Accordingly, appellant inadequately briefed his third issue and thus waives that issue on appeal. *See* TEX.R.APP. P. 38.1(i); *Cardenas,* 30 S.W.3d at 393.

Appellant's third issue is overruled.[3]

### Effectiveness of Assistance of Counsel

In his fourth issue, appellant contends, in the alternative, that he was ineffectively assisted by trial counsel if either his second and third issues were waived by a failure to raise the challenge at trial.

■■ A defendant can prevail on a claim of ineffective assistance of counsel only if he proves by a preponderance of the evidence: (1) that defense counsel's performance was so deficient that his assistance fell below an objective standard of reasonableness; and (2) that the deficient performance caused prejudice, namely, a reasonable probability, sufficient to under-

---

**3.** Unlike appellant's federal constitutional challenge to the statute, appellant did not first present his challenge that the statute was unconstitutional under the Texas Constitution to the trial court in his motion for a new trial. An appellant may not raise for the first time on appeal a challenge to the constitutionality of a statute. *Karenev v. State,* 281 S.W.3d 428, 434 (Tex.Crim.App.2009) (facial challenges); *Garcia v. State,* 887 S.W.2d 846, 861 (Tex.Crim.App.1994) (as applied challenges). We also conclude that appellant failed to preserve for appellate review his challenge concerning the Texas Constitution. *See* TEX. R.APP. P. 33.1(a)(1); *Swain v. State,* 181 S.W.3d 359, 367–68 (Tex.Crim.App.2005).

mine confidence in the outcome, that but for the deficiency, the outcome would have been different. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To raise ineffective assistance of counsel on direct appeal based on trial counsel's failure raise a challenge at trial, an appellant must show that the trial court would have erred in overruling the challenge. *See Vaughn v. State,* 931 S.W.2d 564, 566 (Tex.Crim.App.1996); *Alexander v. State,* 282 S.W.3d 701, 705 (Tex.App.-Houston [14th Dist.] 2009, pet. ref'd).

We have disposed of appellant's second and third issues on grounds other than that his trial counsel failed raise the issue at trial. Hence, appellant would not have prevailed on these issues even had his counsel raised the arguments at trial. Appellant's federal constitutionality attack failed on the merits. Appellant's Texas constitutionality attack was waived for failure to adequately brief. Appellant, therefore, has not shown how the trial court would have erred by denying the challenge. We hold that appellant's trial counsel was not ineffective.

Appellant's fourth issue is overruled.

## Conclusion

We affirm the judgment.