In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00123-CR
_____

TRAYLIN COTY WATKINS, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 18-30034**

## MEMORANDUM OPINION

A grand jury indicted Traylin Coty Watkins (Watkins, Defendant, or Appellant) for evading arrest or detention with a vehicle, and the indictment alleged that Watkins "did then and there intentionally flee from Isiah Volrie, a person the Defendant knew was a peace officer who was attempting lawfully to detain the Defendant, and the Defendant used a vehicle while the Defendant was in flight[.]" *See* Tex. Penal Code Ann. § 38.04(a), (b)(2). A jury found Watkins guilty of the offense and assessed punishment at three years of confinement in the Texas

Department of Criminal Justice-Institutional Division. The trial court sentenced Watkins and he timely appealed. Watkins lists sixteen issues on appeal which will be grouped together based on the nature of the stated challenges. Finding no error, we affirm the trial court's judgment.

## Evidence at Trial

Officer Isiah Volrie, a patrol officer with the Beaumont Police Department, testified that he was wearing his department-issued police uniform and was on patrol in his marked patrol car on September 16, 2017, when he observed a tan colored vehicle run a stop sign. Officer Volrie attempted to catch up to the vehicle and activated his vehicle's emergency lights to initiate a traffic stop. The vehicle pulled behind a residence and "came out the back of it" towards Liberty, a westbound only road, "went the opposite way on traffic, ran through a few more blocks, came down 11th Street, went back the wrong way on traffic and stopped back at the same residence." The dash cam video from Officer Volrie's patrol car of the events that night was admitted into evidence and published to the jury.

According to Officer Volrie, at one point, the driver's side door of the tan vehicle opened and "a dark-skinned black male, [with] a thick build [and] with what looked to be a Chicago Bulls hat on[]" looked out and ran out of the vehicle while the vehicle was moving. Officer Volrie testified that he "partially saw the side of [the suspect's] face when he turned around and looked at me when I ran." Officer

2

Volrie testified that the vehicle came to rest at a pole at a carport. Due to a previous injury, Officer Volrie was unable to catch up with the suspect and lost track of him. Once he realized he lost the suspect, Officer Volrie set up a perimeter and provided his location for assistance. Officer Volrie was informed a K-9 unit was nearby, and he tried to stay away from the area as much as possible so that the dog could pick up the scent from the last location where the officer saw the suspect. Officer Volrie had no doubt that the suspect was fleeing from him and that the suspect knew he was a peace officer.

Two or three minutes later other officers arrived on the scene, including Officer Little and his K-9. According to Officer Volrie, the K-9 tracked from the abandoned vehicle to the house where the vehicle had pulled into the driveway and where it stopped the second time, and the dog alerted to that residence. The officers were given permission to enter the residence by a female occupant, but their entry was delayed because they were given at least three different stories by the female occupant. The officers were looking for an adult black male; and an adult black male, later identified as Watkins, was found in a bathtub inside the residence. Officer Volrie testified that it could not have been more than fifteen minutes between the time he saw someone "bail from the vehicle" and when they located Watkins inside the residence. When he initially found Watkins inside the residence in the bathtub, Officer Volrie could not tell if the black male was the suspect because the bathroom

3

was darker, and it was not until Volrie "got him towards the light[]" in a well-lit area outside that Volrie "made an ID of the subject" and was sure and he knew "that's my guy."

Officer Volrie testified that after he arrested the suspect, he inventoried the abandoned vehicle according to protocol prior to it being towed, and he found paperwork with the last name "Watkins" on it and a cell phone with a photo on it "that was a 100 percent match of the black male that [Officer Volrie] had in the vehicle." There was a ball cap in the bedroom that was down the hallway from the bathroom, and Officer Volrie believed that was the cap he had seen the suspect wearing. Officer Volrie testified that he was "100 percent[]" positive that Watkins was the individual driving the tan vehicle that fled when Officer Volrie attempted the traffic stop.

Officer Adam Little, a K-9 Unit handler with the Beaumont Police Department, testified that on that night he responded to an evading arrest call and arrived at a residence in Beaumont with his K-9. Officer Volrie had been at the scene a "[m]inute, maybe two[]" before Officer Little arrived. Officer Volrie showed Officer Little a vehicle from which a missing suspect had fled, Officer Volrie told Officer Little that he had not gone past the vehicle, and Officer Little had the K-9 track and search for the suspect from a starting point that no officer had disrupted. According to Officer Little, the K-9 is trained to track the smell "of the freshest

4

ground disruption and work off of that[,]" and that "[a]s long as the officer can tell me, I stopped here, I think he went that way . . . we are very successful with the dog picking up the track[.]" Officer Little testified that the officers are trained in how the dog is trained and that, as in this case, the officers know how to secure the perimeter to make a successful apprehension. The K-9 tracked the smell between two houses nearby, investigated under a porch of one of the residences, tracked a smell to the front porch of that residence, threw his head up, took a deep breath, and had his tail up, which through Officer Little's training with the K-9 told Officer Little that the K-9 smelled a strong odor from the porch.

Officer Little knocked on the front door of the residence and obtained verbal consent to search the residence from the female that answered the door. Three children came out of the house which Officer Little agreed "fit with what [the officers] were being told" when they obtained consent from the female. According to Officer Little, he helped secure the perimeter, a search was conducted, and Watkins was brought out of the residence in handcuffs and detained in the back of the patrol car. Officer Little helped Officer Volrie search the vehicle abandoned by the suspect as a search incident to arrest, and they found a cell phone that displayed an image of Watkins's face on the screen when it was picked up.

Officer Jessie Lisenby with the Beaumont Police Department testified that he was on patrol training another officer and was called to the scene. When he arrived,

5

there were several officers standing around a house. The officers spoke with a female that came out of the house, and he saw children come out of the house. After consent was obtained, he went inside the residence with other officers "to find the male that [Officer Lisenby] was told was in there." Only one person, Watkins, was found in the residence, and he was in a bathtub. According to Lisenby, Watkins would not provide his name when asked, he "was argumentative[,]" and the officers gave him several commands to step out of the bathtub, which he refused to do. The body cam recording of Officer Lisenby's interaction with Watkins inside the residence was admitted into evidence and published to the jury. Watkins was detained after being uncooperative and so the officers could continue to investigate, and Watkins was later arrested for evading in a motor vehicle. According to Officer Lisenby, while Watkins was still in the bathroom, Officer Lisenby asked Officer Volrie "if this was the guy that he had chased[,]" and Officer Volrie responded that he was not sure and that all he saw was a cap. Officer Lisenby testified that he did not remember seeing a cap in the video recording played at trial and during the search of the residence he did not recall seeing a cap, but he explained that when he was inside the house he was searching for a person and not property.

## Denial of Motion for Instructed Verdict

In issues one and four, Watkins argues the trial court erred in denying Watkins's motion for instructed verdict because there was legally insufficient

evidence to support the police identification of Watkins as the offender and that the attempted arrest or detention of Watkins was lawful under the circumstances. According to his first issue, "at no point in Appellant's trial did the State ever prove that Appellant's arrest (or detention []) was lawful, particularly since the sole eyewitness, Officer Volrie, could not positively and completely identify Appellant as the missing offender." As for the element that the attempted arrest is lawful, Watkins argues in his fourth issue that the State did not prove Appellant's arrest was lawful because there was not an arrest warrant for Watkins prior to him being detained and placed in a squad car, Officer Volrie could not positively identify Watkins as the offender, and the jury's instruction to not consider "the fact that the defendant has been arrested" in the written instructions negated any finding of lawful arrest.

A challenge to the trial court's denial of a motion for instructed verdict operates as a challenge to the sufficiency of the evidence. *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993); *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). In reviewing the legal sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the *Jackson v. Virginia* standard. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under that standard, a reviewing court must consider all the evidence in the light most favorable

to the verdict and determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Id.* at 902; *see also Jackson*, 443 U.S. at 319.

"A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony." *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). As the trier of fact, the jury is the sole judge of the weight and credibility of the witnesses' testimony, and on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 899, 905-06. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id.* at 899 n.13 (citing *Jackson*, 443 U.S. at 326). On appeal, we only ensure the jury reached a rational verdict, and we may not substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009).

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting to lawfully arrest or detain him. Tex. Penal Code Ann. § 38.04(a). "[T]he State may prove the defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled

8

with all reasonable inferences from that evidence." *Gardner*, 306 S.W.3d at 285; *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

In addition to the testimony regarding the K-9 alerting to the house where Watkins was found, which the jury could have considered even though Watkins argues the evidence creates "a substantial likelihood of misidentification of Appellant[,]"[1] there is other direct and circumstantial evidence of Watkins's identity as the person that committed the offense. Officer Volrie testified at trial that he was "100 percent[]" positive that Watkins was the individual driving the vehicle that night. Also, there is circumstantial evidence that Watkins was the person that committed the offense. Officer Volrie testified that after he arrested the suspect, he inventoried the vehicle according to protocol prior to it being towed and he found paperwork with the last name "Watkins" on it and a cell phone with a photo on it "that was a 100 percent match" to Watkins. Officer Little also testified that the cell phone recovered from the car had Watkins's photo on the screen. Officer Lisenby testified that when they found Watkins inside the house, Watkins was argumentative,

---

[1] Watkins argues on appeal that Officer Volrie's "evidence on Appellant's identity was ostensibly inadmissible under at least 4 of the factors listed in *Neil v. Biggers*[,]" and he argues that *Biggers* held that where, "as here, evidence derived from overly suggestive procedures is used, it is the likelihood of misidentification which violates Defendant's Fourteenth Amendment Due Process rights[] and necessitates reversal." In the trial court, Watkins did not object to the admission of Officer Volrie's testimony on this basis or to the procedures used in identifying Watkins. *See* Tex. R. App. P. 33.1.

9

uncooperative, and would not provide his name. Officer Volrie testified that there was a ball cap in the bedroom that was down the hallway from the bathroom, and he believed that was the cap he had seen Watkins wearing. Accordingly, we conclude that the State established Watkins identity from the direct and circumstantial evidence, coupled with all reasonable inferences from that evidence. *Gardner*, 306 S.W.3d at 285. We reject Watkin's argument about "overly suggestive procedures" because based on the record before us, we conclude the officer identified Watkins as the suspect based upon the direct and circumstantial evidence, and reasonable inferences therefrom.

Watkins complains about the written jury instruction that the jury "not consider the fact that the defendant has been arrested." According to Watkins, because the jury was "instructed . . . not to consider the arrest during deliberations, a necessary element of evading arrest could not be found by the jury." We disagree. The instruction refers to Watkins's arrest for the offense of evading arrest and not to the statutory element that the attempted arrest or detention that Watkins was fleeing from was lawful. *See* Tex. Penal Code Ann. § 38.04(a). The written instruction did not negate a necessary element of evading arrest. The jury heard Officer Volrie testify that he observed the tan vehicle fail to stop at a stop sign and that he attempted to stop the vehicle for the traffic violation. *See Garcia v. State*, 827 S.W.2d 937, 944

10

(Tex. Crim. App. 1992) (traffic violations committed in an officer's presence provide probable cause to stop a vehicle and detain the driver).

Giving proper deference to the role of the jury to evaluate the credibility and the weight of the evidence, we conclude the evidence was sufficient for a rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 894-95. The jury could have reasonably concluded that Watkins evaded arrest or detention by intentionally fleeing from a person he knew was a peace officer who was attempting to lawfully arrest or detain him. *See* Tex. Penal Code Ann. § 38.04(a). We overrule issues one and four.

Constitutional Challenges

Watkins raises constitutional challenges in issues two, three, seven, fourteen, fifteen, and sixteen. In issue two, Watkins argues the trial court erred by denying his motion for instructed verdict because the identification made by Officer Volrie "was impermissibly suggestive and conducive to irreparable mistaken identification, thereby denying Appellant Fourteenth Amendment due process and necessitating reversal[.]" In issue three, Watkins argues that the trial court abused its discretion by allowing Officer Volrie "to retrospectively identify Appellant at trial when he could not identify him at the scene, thereby denying Appellant due process and necessitating reversal[.]" In issue seven, Watkins argues the trial court violated Watkins's sixth and fourteenth amendment rights to a fair trial by instructing the jury

11

that Officer Volrie was a "peace officer[.]" In issues fourteen through sixteen, Watkins argues that he was deprived of adequate notice under the United States and Texas Constitutions.

Preservation of error is a systemic requirement, which appellate courts must consider in deciding whether an issue is preserved for appeal. *Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016). To secure a defendant's right to appellate review, the Texas Rules of Appellate Procedure require that the record show that the party complaining about an alleged error state "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" Tex. R. App. P. 33.1(a)(1)(A). Additionally, the party complaining about error must establish that the trial court ruled on the party's request, objection, or motion, either expressly or implicitly, or that the complaining party objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2). When the defendant's complaint concerns an alleged violation of the defendant's constitutional rights, the defendant must give the trial court "the chance to rule on the specific constitutional objection because it can have such heavy implications on appeal." *Clark v. State*, 365 S.W.3d 333, 340 (Tex. Crim. App. 2012). Watkins failed to raise these constitutional claims while he was in the trial court, and therefore he failed to

12

preserve his right to assert them in his appeal. *See* Tex. R. App. P. 33.1(a). Issues two, three, seven, fourteen, fifteen, and sixteen are overruled.

## Jury Charge

In issues five, six, eight, and nine, Watkins alleges jury charge error. In issue five, Watkins argues the trial court reversibly erred by instructing the jury not to consider the fact that the defendant has been arrested, thereby precluding essential jury deliberation on this element of the offense. In issue six, he asserts that the trial court reversibly erred by commenting on the weight of the evidence as to an element of the offense by instructing the jury that Volrie was a "peace officer" where his status as a peace officer is an element of the offense. In issue eight, Watkins contends that the trial court erred by failing to provide the jury with any statutory definition of "peace officer." In Watkins's ninth issue, he argues that, based on his grounds for issues four through eight, the trial court caused cumulative errors in the jury charge and resulted in egregious harm.

When reviewing an alleged charge error, we determine whether error existed in the charge and, if so, whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). If no error occurred, our analysis ends. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). When an appellant does not preserve a jury charge error by making a timely objection, an unobjected-to charge requires reversal only if it resulted in

13

egregious harm, that is, the "error is so egregious and created such harm that [the accused] 'has not had a fair and impartial trial[.]'" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1995) (op. on reh'g). To determine the degree of harm, a reviewing court should consider "the entire jury charge, the state of the evidence, . . . the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Id.*; *see also Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).

We have already overruled Watkins's argument in issue five in our discussion of issue four. In issue six, Watkins complains of the following instruction by the trial court:

> The state accuses the defendant of having committed the offense of evading arrest in a motor vehicle. Specifically, the accusation is that the defendant did then and there intentionally flee from Isiah Volrie, whom the defendant knew was a peace officer attempting to lawfully detain the defendant, and the defendant used a vehicle while he was in flight.

We disagree with Watkins's argument that the trial court was commenting on the weight of the evidence by stating that Volrie was a peace officer. Rather, we conclude that the instruction was merely restating the accusation against Watkins by the State because it tracks the language of the indictment, and it was not a comment on the weight of the evidence. Accordingly, we overrule Watkins's sixth issue.

In issue eight, Watkins argues that the trial court's failure to provide a statutory definition of "peace officer" requires reversal. Watkins did not object to

the jury charge. Office Volrie testified that he was a patrol officer with the Beaumont Police Department, in his marked police vehicle, and wearing his police-issued uniform on the date of the offense. Whether Officer Volrie was a "peace officer" was not contested at trial. Nothing in the record indicates that the lack of a definition would have confused the jury or caused the jury to misapply the law. *See Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) ("[The] failure to give an abstract instruction is reversible only when such an instruction is necessary to a correct or complete understanding of concepts or terms in the application part of the charge."). Even assuming without deciding that the failure to provide a statutory definition constituted error, Watkins has not shown that such error, if any, is so egregious and created such harm that he was denied a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171.

In his ninth issue, Watkins contends the alleged errors constituted cumulative error, denying him a fair and impartial trial. Under the cumulative error doctrine, the combined effect of multiple errors may, in the aggregate, constitute reversible error, even though individual error, analyzed separately, was harmless. *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009); *Flores v. State*, 513 S.W.3d 146, 174 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). As stated above, we found no error by the trial court as alleged in issues five and six, found no egregious harm in

the alleged error in issue eight, and found Watkins failed to preserve error as to issue seven. *See Gamboa*, 296 S.W.3d at 585-86. Accordingly, the cumulative error doctrine does not apply, and we overrule issue nine.

Denial of a Hearing on Motion for New Trial

In his tenth issue, Watkins argues the trial court abused its discretion by denying a hearing on Watkins's motion for a new trial where the affidavit of Kenya Keeling, whom Watkins asserts is the renter of the home where he was found, showed Watkins's "actual innocence by showing where he was (with her) at all pertinent times, and she had been unavailable at trial, but was now present in the courtroom to testify[.]" We note that the appellate record demonstrates that the trial court held a hearing on Watkins's motion for new trial and denied the motion. As noted by the trial court at the hearing on the motion for new trial, Watkins's motion for new trial was based on the arguments that Watkins was sentenced under the wrong law because there were two versions of the statute and that the evidence was factually and legally insufficient, not that there was a new witness. The trial court also pointed out that Keeling had been identified at trial by the officers and was not a new witness.

In his Reply Brief, Watkins argues that "[f]ollowing denial of Appellant's Motion for Continuance for the New Trial hearing, the timely submission of Ms. Keeling's Affidavit in support of the Motion for New Trial, definitively requires an

evidentiary hearing in which Ms. Keeling can freely testify on what happened on the date of Appellant's detention, and where he was prior to the police appearing."

An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial court's denial was clearly erroneous and arbitrary. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018). A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling. *Id*. This deferential review requires the appellate court to view the evidence in the light most favorable to the trial court's ruling. *Id*. The appellate court must not substitute its own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* Further, "[m]otions for new trials on grounds of newly discovered evidence are not favored by the courts and are viewed with great caution." *Drew v. State*, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987).

To be entitled to a new trial for newly discovered evidence, the defendant must show that the new evidence was recently discovered, and the evidence must be material. Tex. Code Crim. Proc. Ann. art. 40.001. The test for materiality is a four-part test: (1) the newly discovered evidence was unknown or unavailable to the defendant at the time of trial; (2) the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of diligence; (3) the new evidence

is admissible and not merely cumulative, corroborative, collateral or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial. *Carsner v. State*, 444 S.W.3d 1, 2-3 (Tex. Crim. App. 2014). A motion for new trial cannot be granted unless the defendant shows entitlement to one under the law. *State v. Thomas*, 428 S.W.3d 99, 104 (Tex. Crim. App. 2014).

Because Watkins failed to show that Keeling was a new witness that was unavailable for trial, Watkins was not entitled to another hearing, and the trial court did not abuse its discretion in denying the motion for new trial. We overrule issue ten.

## Section 38.04 of the Texas Penal Code

In issue eleven, Watkins argues that the trial court erred as a matter of law by sentencing Watkins to three years in TDCJ-ID because the sentencing level for evading arrest with a motor vehicle under section 38.04(b) is a state jail felony and not a third-degree felony. In issue twelve, Watkins argues that there was legally insufficient evidence to convict him of the third-degree felony, that he had no prior conviction for evading arrest, and one of the published versions of section 38.04 in effect at the time of his arrest required the prior conviction. In issue thirteen, Watkins asserts that, because there are two officially published and contradictory and ambiguous versions of section 38.04(b), under the rule of lenity the offense level for a violation of the statute must be a state jail felony and not a third-degree felony.

18

We previously addressed section 38.04 in *State v. Sneed*, No. 09-14-00232-CR, 2014 Tex. App. LEXIS 10615, at \*\*7-10 (Tex. App.—Beaumont Sept. 24, 2014, pet. ref'd) (mem. op., not designated for publication). Therein, we noted that two versions of section 38.04(b) were enacted in 2011. 2014 Tex. App. LEXIS 10615, at \*\*7-8. Under the first version, evading arrest or detention is:

> (1) a state jail felony if:
>    (A) the actor has been previously convicted under this section; or
>    (B) the actor uses a vehicle or watercraft while the actor is in flight and the actor has not been previously convicted under this section;
> (2) a felony of the third degree if:
>    (A) the actor uses a vehicle or watercraft while the actor is in flight and the actor has been previously convicted under this section; or
>    (B) another suffers serious bodily injury as a direct result of an attempt by the officer or investigator from whom the actor is fleeing to apprehend the actor while the actor is in flight . . . .

Texas Penal Code Ann. § 38.04(b). Under the second version, evading arrest or detention is:

> (2) a felony of the third degree if:
>    (A) the actor uses a vehicle while the actor is in flight;
>    (B) another suffers serious bodily injury as a direct result of an attempt by the officer from whom the actor is fleeing to apprehend the actor while the actor is in flight; or
>    (C) the actor uses a tire deflation device against the officer while the actor is in flight[.]

*See id.*

In *Sneed*, we explained that the Fort Worth Court of Appeals had addressed the differences and concluded that even if the amendments were irreconcilable,

19

Senate Bill 1416—codified in the second version above—was the latest of the bills to be enacted and would prevail over earlier bills. *See Sneed*, 2014 Tex. App. LEXIS 10615, at *9 (citing *Adetomiwa v. State*, 421 S.W.3d 922, 926-27 (Tex. App.—Fort Worth 2014, no pet.)). We follow our previous ruling and once again agree with the Fort Worth Court and conclude that "[t]he offense of evading arrest or detention with a motor vehicle is a third-degree felony if the actor uses a motor vehicle while in flight, regardless of whether the actor has a previous conviction for evading arrest or detention." *See id.* at **9-10; *see also Fulton v. State*, 587 S.W.3d 76, 78 (Tex. App.—San Antonio 2019, no pet.) (adopting *Adetomiwa*); *Warfield v. State*, No. 03-15-00468-CR, 2017 Tex. App. LEXIS 5380, at **31-33 (Tex. App.—Austin June 14, 2017, pet. ref'd) (mem. op., not designated for publication) (adopting *Adetomiwa* and cataloging Texas courts of appeals that have reached the same conclusion). We need not reach the question of whether the rule of lenity applies. *See Ochoa v. State*, 355 S.W.3d 48, 53 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

Here, the indictment alleged that Watkins intentionally fled, using a vehicle, from Officer Volrie, knowing Officer Volrie was a peace officer who was attempting to lawfully arrest or detain Watkins. Watkins was charged with and convicted of the third-degree felony offense of evading arrest, and his three-year sentence is within the punishment range for a third-degree felony. *See* Texas Penal Code Ann. § 12.34 (punishment range for a third-degree felony is imprisonment in the Texas

20

Department of Criminal Justice for any term of not more than ten years or less than two years and a possible fine not to exceed $10,000). Issues eleven, twelve, and thirteen are overruled.

Having overruled all of Watkins's appellate issues, we affirm the trial court's judgment.

AFFIRMED.

_____

LEANNE JOHNSON
Justice

Submitted on May 21, 2020
Opinion Delivered January 27, 2021
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.