

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00109-CR

———————————————

KEVIN THOMPSON, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. F22-3486-211

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Kevin Thompson appeals his conviction for family-violence assault by impeding breath or blood. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(B). On appeal, Thompson argues in a single issue that the trial court abused its discretion by allowing the State's primary witnesses—including the victim, A.T.[1]—to testify about extraneous instances of Thompson's physical and mental abuse because this testimony's probative value was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. Because Thompson failed to preserve this issue for our review, we affirm.

## I. BACKGROUND

Several years before the events giving rise to this case, a Child Protective Services (CPS) investigation led to Thompson's removal from the family home where his five children—including A.T.—and their mother (Mother) lived. But after a time, he began visiting his family on Friday evenings. Because these visits made A.T. and her younger brothers uncomfortable, they would often leave before Thompson arrived.

But Thompson's April 15, 2022 visit was an exception; the entire family spent that Friday evening together. After picking up dinner at Raising Cane's, the family

---

[1]We use aliases to refer to the victim and her family members—other than the appellant. *See* Tex. R. App. P. 9.10(a)(3); *see also* Tex. R. App. P. 9.8(a) (defining "alias" to include "one or more of a person's initials or a fictitious name").

2

returned home to play board games. When the games were finished, A.T. went upstairs to take a shower and get ready for bed.

After taking a shower, A.T. went to her bedroom and then returned to the bathroom. When she closed the bathroom door and turned on the light, her fourteen-year-old younger brother jumped out and scared her. Startled and frightened, A.T. yelled, "What the f*ck!" Thompson overheard this exclamation.

Later that night, A.T.'s older brother knocked on her door and told her that Thompson and Mother wanted to see her downstairs. When she went downstairs, Thompson confronted her about cursing at her younger brother. A.T. tried to explain what had happened, but her explanation did not satisfy Thompson. Rather than calming down, Thompson began voicing other frustrations with A.T. and calling her "stupid" and "dumb." Angry and upset, A.T. started crying and repeatedly asked Thompson to stop calling her names. Eventually, Thompson put his hand up and threatened to slap A.T. if she "sa[id] one more word."

Thompson continued to call A.T. names, and she again asked him to stop. Thompson followed through on his threat and slapped her. He then proceeded to choke her while bending her backward over the kitchen counter. The choking was so severe that A.T. experienced blurred vision, blacked out, and urinated on herself. After Thompson released his grip, A.T. fell to the floor and screamed for help.

When the physical assault was over, Thompson cursed at A.T. and told her to get out of the house. A.T. then got dressed and called her boyfriend to pick her up at the front office of her apartment complex.

Although A.T. told Thompson that she was going to call the police, she never actually did so. But in the days following the assault, A.T.'s older brother discovered what had happened and eventually confided in his school counselor. This outcry led to a CPS investigation, law enforcement involvement, and Thompson's being arrested and charged with family-violence assault by impeding breath or blood.

During the investigation, Thompson acknowledged that he had argued with A.T., but he denied choking her. He claimed that he had "popped" her once for "mouth[ing] off" to him and then had used his arm to restrain her from hitting him.

Thompson stuck to this story during trial and offered a version of events in which he had simply stepped up as a father to correct a child who was out of line and then had acted in self-defense to protect himself against A.T.'s attacks. To rebut Thompson's defensive theory, the State presented extraneous evidence shedding light on Thompson's relationship with A.T., including his long history of physical and mental abuse and exceedingly harsh punishments.

After hearing all the evidence, the jury rejected Thompson's self-defense claim and found him guilty of family-violence assault by impeding breath or blood. During the trial's punishment phase, the jury assessed Thompson's punishment at ten years' confinement and recommended that his prison sentence be probated. The trial court

sentenced Thompson to ten years in prison, probated for ten years. This appeal followed.

## II. DISCUSSION

In his sole appellate issue, Thompson contends that the trial court abused its discretion by allowing the State's primary witnesses to testify about extraneous instances of Thompson's physical and mental abuse because this testimony's probative value was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. But Thompson failed to preserve this complaint for our review.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). An objection must be specific concerning (a) grounds, (b) parts, (c) parties, and (d) purposes. *See* Tex. R. App. P. 33.1(a)(1); *Ensley v. State*, No. 02-24-00188-CR, 2025 WL 1717144, at *3 (Tex. App.—Fort Worth June 19, 2025, pet. ref'd) (mem. op., not designated for publication). Further, the party must obtain an express or implicit adverse ruling from the trial court or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020). Most complaints, "whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).

The complaint made on appeal must comport with the complaint made in the trial court; otherwise, the error is forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). To determine whether the complaint on appeal conforms to that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339; *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009); *Pena*, 285 S.W.3d at 464.

Here, Thompson's appellate issue does not comport with any of the objections that he made in the trial court. After the State described in its opening statement certain acts of violence that Thompson had committed against A.T. and her siblings, his trial counsel stated, "I object to the testimony. [A.T.] is on trial. Not the children, Your Honor." But the trial court responded (correctly) that the State's opening statement was not evidentiary and therefore did not rule on the objection. Thompson's trial counsel then thanked the trial court, and the State reiterated—without objection—that the victim would testify about prior instances of physical abuse.

During her direct examination, A.T. detailed Thompson's punishment methods—which she characterized as torture—including Thompson's requiring the children to hold a push-up position for hours and hitting them with his hands or an extension cord. But Thompson's only objection to this testimony was to its narrative format—an objection that the trial court sustained.

Later, A.T. provided additional details about Thompson's physically abusive punishment methods:

> Like, normally -- well, to me, it was normal. He would usually have us lay out on the bed. Like on our stomachs and have our pants and underwear pulled down, and he will whip us with a belt on our butts. But the extreme to us is -- well, he would ask us, "The easy way or the hard way?" And we would be like, "The easy way." And if we don't take it how we should, and it's not as simple as he want it to be, we will get it the hard way, and he will either hang us by our feet upside down and whip us or --

Thompson again objected to the testimony's narrative format, but he did not object on Rule 403 grounds. This time, the trial court overruled the objection and allowed A.T. to continue describing the types of punishments that she and her siblings had received. When the prosecutor asked A.T. whether Thompson had choked her, Thompson objected to leading. After the trial court sustained this objection, A.T. proceeded to recount—without objection—how Thompson had punched her in the eye when she was in first grade because she had refused to take a shower.

Mother testified about the physical abuse that she had endured during her twenty-plus year relationship with Thompson. But Thompson's only objections during Mother's testimony were two hearsay objections, both of which were sustained.

During A.T.'s brother's testimony, Thompson objected to (1) a question concerning the brother's suicidal thoughts and (2) the brother's answer to a question on cross-examination that he "trust[ed A.T.'s] words" as nonresponsive. But he did not object to the brother's testimony that Thompson had whipped him with an extension cord, leaving a permanent mark on his arm; slapped him; choked him; and tasered him.

It was not until Thompson himself testified that the prejudicial impact of the evidence concerning his extraneous acts of physical abuse was discussed on the record—and it was referenced by the trial court, not by Thompson. During cross-examination, the State asked Thompson if he had heard the testimony that he had beaten the three oldest children with extension cords. Thompson objected, and the trial court overruled the objection during the following exchange:

> [Defense Counsel]: Your Honor, I object from 404(b), character evidence, other crimes, wrongs, or acts. It's under that particular Rule, Your Honor. I object under 404.
>
> THE COURT: Yes, sir. I understand the objection under 404. This was information or testimony that was brought out by a witness yesterday. Your client is having an opportunity to explain that. I understand your request that it's more prejudicial than probative, but I'm going to deny that at this time. Overrule your objection.

Thus, even though the trial court framed Thompson's objection as an argument that the testimony's probative value was substantially outweighed by the danger of unfair prejudice, the record clearly reflects that Thompson objected under Rule 404(b), not on Rule 403 grounds.

8

Because Thompson never raised a Rule 403 objection during trial, he has failed to preserve his sole appellate issue for our review. *See Clark*, 365 S.W.3d at 339; *Lovill*, 319 S.W.3d at 691–92; *Pena*, 285 S.W.3d at 464. And even if Thompson had actually raised a Rule 403 objection at some point during trial, his appellate complaint would still not be preserved because he did not object every time that the State elicited testimony regarding his extraneous acts of physical abuse. *See Minze v. State*, No. 02-19-00303-CR, 2021 WL 2006474, at *2 (Tex. App.—Fort Worth May 20, 2021, no pet.) (mem. op., not designated for publication) ("[W]hen a trial court overrules an objection to the first question on a particular subject, but no objection is lodged to a second or subsequent questions eliciting the same objectionable testimony, error is not preserved regarding the admission of testimony on that subject." (first citing *McGuire v. State*, No. 02-18-00030-CR, 2019 WL 4048865, at *2 (Tex. App.—Fort Worth Aug. 28, 2019, no pet.) (mem. op., not designated for publication); and then citing *Lumsden v. State*, 564 S.W.3d 858, 880 (Tex. App.—Fort Worth 2018, pet. ref'd))); *see also Matz v. State*, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd) ("It is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence.").

We overrule Thompson's sole issue.[2]

---

[2]Although Thompson enumerates only one appellate issue in his brief, he alludes to other alleged errors. But as we outline below, these unenumerated complaints are all unpreserved and inadequately briefed. First, Thompson contends that A.T.'s brother "should not [have] been able to testify" concerning incidents of

## III. CONCLUSION

Having overruled Thompson's sole issue, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 26, 2026

---

abuse about which he lacked personal knowledge. But Thompson did not raise this complaint in the trial court, and in his appellate briefing, he failed to point to any specific objectionable testimony or to include any record citations supporting this contention. Second, Thompson complains about A.T.'s boyfriend's having been allowed to testify that A.T. had told him that "her dad [had] choked her out and that she [had] peed herself." But while Thompson initially objected to A.T.'s boyfriend testifying as an outcry witness, he ultimately withdrew his objection following a hearing outside the jury's presence. Finally, Thompson contends that he should have been allowed to "vigorously" cross-examine A.T. about her being on probation for assaulting her boyfriend. But at trial, Thompson did not dispute the trial court's statement that it was allowing him to "get[] out in front of the jury what [he had] requested," namely "what she's on probation for and what the act is and who the victim is." Thus, Thompson did not preserve any of these miscellaneous complaints. *See* Tex. R. App. P. 33.1(a)(1); *Montelongo*, 623 S.W.3d at 822. Further, because Thompson failed to provide any authority or substantive analysis supporting these complaints, they present nothing for our review. *See* Tex. R. App. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); *see also Jessop v. State*, 368 S.W.3d 653, 681, 685 (Tex. App.—Austin 2012, no pet.) (holding that because appellant failed to proffer any argument or authority with respect to his claims, he waived any error due to inadequate briefing); *Ochoa v. State*, 355 S.W.3d 48, 56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("An appellant waives an issue on appeal if he fails to adequately brief that issue by presenting supporting arguments and authorities.").

10