

# NUMBER 13-23-00359-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ZACHARY JABE RILEY,                                              Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

## ON APPEAL FROM THE 23RD DISTRICT COURT
## OF WHARTON COUNTY, TEXAS

# OPINION

**Before Justices Silva, Cron, and Fonseca**
**Opinion by Justice Silva**

A jury found appellant Zachary Jabe Riley guilty of two counts of unlawful interception of a wire, oral, or electronic communication, second degree felonies. *See* TEX. PENAL CODE § 16.02(b)(1), (f). For each count, the trial court sentenced appellant to two years' imprisonment, with the sentences suspended and community supervision imposed for four years. By seven issues, which we renumber and reorganize as six,

appellant argues that: (1) the trial court lacked subject matter jurisdiction because the appointment of prosecutors from the Texas Attorney General's Office violated the separation of powers doctrine; (2) Texas Penal Code Section 16.02 is unconstitutional on its face and as applied to his case; (3) the trial court violated Texas Code of Criminal Procedure Article 38.05; (4) the evidence supporting his convictions was legally insufficient; (5) the trial court abused its discretion "by refusing to allow appellate counsel to introduce testimony in support of" his motion for new trial; and (6) he was denied due process at the motion for new trial hearing. We affirm as modified.

## I.    BACKGROUND

On July 5, 2022, a grand jury filed a superseding indictment charging appellant with two counts of unlawful interception. *See id.* Both counts alleged that appellant intentionally "intercept[ed] or endeavor[ed] to intercept a wire, an oral, or an electronic communication, namely the voicemail of Chanda Riley," appellant's ex-wife, "by using the cellphone password and passcode of the said Chanda Riley without her knowledge and without her consent." Count one was alleged to have occurred on or about January 11, 2019, and count two was alleged to have occurred on or about December 27, 2018. On August 11, 2022, appellant filed a motion to quash the superseding indictment, arguing that it failed to allege a criminal offense. Specifically, appellant argued that "accessing a voicemail message, which is a stored communication, is not 'interception' within the definitions of [Article] 18A.001, [C]ode of [C]riminal [P]rocedure, and [Section] 16.02, [P]enal [C]ode, because a stored communication is not acquired contemporaneously but rather accessed from storage." On August 18, 2022, the trial court denied appellant's

2

motion to quash.

The case proceeded to a jury trial. Appellant pleaded not guilty, and the trial resulted in a mistrial due to a hung jury. Subsequently, the presiding judge, the Honorable Ben Hardin, filed a request for assignment with the Eleventh Administrative Judicial Region due to a "conflict." On April 19, 2023, the Honorable Susan Brown, Presiding Judge for the Eleventh Administrative Judicial Region, assigned the Honorable Judge Russell Lloyd to preside over this cause.

On April 24, 2023, appellant filed his "Special Plea In Bar" asserting that "[u]nder the circumstances of the mistrial in this case, further proceedings . . . are barred by the Double Jeopardy Clauses contained in Article I, Section 14 of the Texas Constitution, the Fifth Amendment of the United States Constitution, and Articles 1.10 and 28.13 of the Texas Code of Criminal Procedure." Appellant specifically alleged that Judge Hardin "interjected himself into the proceedings in a nonjudicial capacity[] by advising the State to correct a deficiency in the State's case[-]in[-]chief" at the first trial. According to appellant, he moved for a mistrial during the first trial when the alleged "nonjudicial intervention occurred," but his motion for mistrial was denied. Appellant attached to his pleading, among other things, a partial transcript purportedly from the first trial.[1] The State filed its response to appellant's "Special Plea in Bar" on May 1, 2023. During a pretrial hearing on April 24, 2023, appellant presented his "Special Plea in Bar" to the trial court. The trial court took appellant's motion under advisement.

On May 8, 2023, a jury was selected for appellant's second trial. The next day,

_____

[1] The appellate record does not contain complete transcripts of the first trial.

3

appellant again pleaded not guilty, and the guilt-innocence phase commenced. The following facts were adduced at trial.

Chanda testified that she and appellant were formerly married and had two boys. Chanda stated that she filed for divorce from appellant in July 2016 because "things were getting worse and worse," and "[i]t just wasn't healthy for anybody." Chanda and appellant divorced in March 2017. According to Chanda, things worsened after she moved out. She stated that appellant "[k]new everywhere that I was, followed me. Showed up at different places, had to know exactly where me and the boys were at all times." Chanda testified that she did not have a lock on her cell phone during the marriage because appellant did not want her cell phone to be locked. She also testified that she and appellant never had discussions about voicemail, that she never gave appellant permission to check or access her voicemail before or after their divorce, and that appellant never asked for permission to do so.

After Chanda and appellant divorced, she bought "a whole new iPhone" and "switched to AT&T" service from Verizon. She stated that she "[e]xplained to [AT&T] I need a new [i]Cloud. This can't be tied to my boys' '[i]Pads. They assured me that it wasn't. I changed my Facebook passwords. I didn't use Yahoo e-mail. I used my [i]Cloud e-mail." In the latter half of 2018, Chanda also possessed a second cell phone for work purposes. Each cell phone had a lock on it. However, Chanda stated she had never thought about changing her voicemail passcode. Chanda stated the four-digit voicemail passcode for both phones was the same and that she never gave appellant this passcode during their marriage, and that he never asked for it. Chanda explained that the passcode

4

she chose related to her "basketball number" from junior high and high school. She stated that appellant knew her "basketball number."

Chanda began dating other men two years after her divorce from appellant. Chanda explained that during this time period, it was possible for her to access her voicemail inbox remotely. She stated, "You can just call your phone own number and push pound to listen to the voice[]mails and you listen to them. It tells the phone number that it comes from and the voice[]mail starts going." However, Chanda explained that her four-digit passcode was needed to access the voicemail remotely. Chanda also testified that she never talked to appellant about her dating life but he seemed to know what was going on. Specifically, Chanda stated that she signed up for appointments with dating services, including Elite Match Making (Elite) and It's Just Lunch (IJL), and told no one about this. Chanda received voicemails from Elite on December 27, 2018, and from IJL on January 9, 2019, which were admitted into evidence. Chanda testified that after receiving the voicemails, she received text messages from appellant referencing the services and appointments. Chanda stated that these text messages terrified her and that she did not know at the time that appellant was accessing her voicemail. Some of appellant's text messages were admitted into evidence. For example, appellant sent Chanda one text message stating, "I will also be seeing you later today at yiur [sic] 1 pm its' just lunch meeting." In another text message, appellant told Chanda, "Mandy and the elite dating service can't help u."

Chanda began recording phone calls she had with appellant because she felt she was in danger, some of which were admitted into evidence, including one from January

11, 2019. In this call, appellant admitted he had "checked" Chanda's voicemails. He told Chanda, "You can absolutely not take any legal action and nobody gets hurt," and suggested that he would be "5 more layers of difficult" if legal action was taken against him. In addition, appellant also stated that Chanda knew that he was checking her voicemails. However, Chanda testified at trial that she had no idea he was checking her voicemails until the January 11, 2019 conversation. Appellant also stated in the call, "I've had your password all my life. Since I've known you! You've given it to me!" Chanda later reported appellant to the police. Chanda testified that, since that time, she changed her voicemail passcode. When asked if there were "[a]ny other incidents involving [appellant] showing up or texting about specific places you were going to be after you changed your voice[]mail password?," Chanda replied, "No."

On May 11, 2023, the jury found appellant guilty of both counts. On July 10, 2023, the trial court assessed appellant's punishment at two years' imprisonment for each count but suspended the sentences and placed appellant on community supervision for a term of four years for each count. On August 8, 2023, appellant filed a timely motion for new trial, asserting nine grounds, which was subsequently denied by the trial court. This appeal ensued.

## II. JURISDICTION

In his first issue, appellant argues that the trial court lacked jurisdiction because of alleged violations of the separation of powers doctrine.

### A. Standard of Review and Applicable Law

A trial court's jurisdiction refers to that court's power to hear and make legally

binding decisions on the parties involved. *See State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009). Jurisdiction is "an absolute systemic requirement" and can be raised for the first time on appeal. *Id.* In criminal cases, a trial court's jurisdiction consists of "the power of the court over the subject matter of the case, conveyed by statute or constitutional provision, coupled with personal jurisdiction over the accused, which is invoked in felony prosecutions by the filing of an indictment or information if indictment is waived." *Id.* (citation modified). A lack of personal or subject-matter jurisdiction deprives a court of any authority to render a judgment. *Ex parte Moss*, 446 S.W.3d 786, 788 (Tex. Crim. App. 2014). Any action taken by a trial court without jurisdiction is void. *Id.* at 789.

The Texas Constitution expressly divides the powers of government into three distinct departments—legislative, executive, and judicial—and prohibits the exercise of any power "properly attached to either of the others" unless that power is grounded in a constitutional provision. TEX. CONST. art. II, § 1; *see State v. Stephens*, 663 S.W.3d 45, 49–50 (Tex. Crim. App. 2021) (discussing the separation of powers provision in the Texas Constitution). "This separation of powers provision reflects a belief on the part of those who drafted and adopted our state constitution that one of the greatest threats to liberty is the accumulation of excessive power in a single branch of government." *Stephens*, 663 S.W.3d at 49 (quoting *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990)). "It has the incidental effect of promoting effective government by assigning functions to the branches that are best suited to discharge them." *Id*. (citation modified) (quoting *Armadillo Bail Bonds*, 802 S.W.2d at 239).

"The separation of powers doctrine requires that 'any attempt by one department

7

of government to interfere with the powers of another is null and void.'" *Id.* at 50 (quoting *Meshell v. State*, 739 S.W.2d 246, 252 (Tex. Crim. App. 1987)). "Although one department occasionally exercised a power that would otherwise seem to fit within the power of another department, courts have approved those actions only when authorized by an express provision of the constitution." *Id*. "Exceptions to the constitutionally mandated separation of powers are never to be implied in the least; they must be 'expressly permitted' by the Constitution itself." *Id.* at 50–51 (quoting *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2014) (quoting TEX. CONST. art. II, § 1)). The separation of powers provision may be violated when one branch of government assumes, or is delegated, to whatever degree, a power that is more "properly attached" to another branch. *Id.* at 51 (quoting *Armadillo Bail Bonds*, 802 S.W.2d at 239). The provision may also be violated "when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers." *Id.* (citing *Armadillo Bail Bonds*, 802 S.W.2d at 239)).

**B.    Analysis**

The day before the original indictment was filed in this cause, Dawn Allison, then the duly elected district attorney for Wharton County, filed a motion to recuse herself and all assistant district attorneys of Wharton County.[2] In her motion, Allison also requested that "any . . . Assistant Attorney General designated by the Attorney General's Office[] be

---

[2] Allison's motion asserted that "the alleged victim in this matter is in a personal dating relationship with the Wharton County Judge who presides over criminal misdemeanor offenses." Allison further alleged that "[t]here may exist an appearance of impropriety should the District Attorney's Office remain the prosecutor for the . . . investigation."

appointed District Attorney Pro Tem for all matters regarding the . . . unindicted cause."

On the same day, the 329th District Court signed its order granting Allison's motion to recuse, which declared that Allison and her office were disqualified pursuant to Texas Code of Criminal Procedure Article 2.07 "in Wharton County criminal matters concerning the complaints against [appellant]." It also stated, "The Court has been informed that the Office of the Attorney General of Texas has agreed to accept prosecution, if any, of this matter." It ordered that

> the Texas Attorney General's Office, or one of his designees, is hereby appointed as District Attorney Pro Tem in all criminal matters concerning the complaints and allegations regarding [appellant], to evaluate and make all decisions pertaining to such matters and to perform the duties of the District Attorney Pro Tem therein as may be permitted and required by law.

Appellant argues that this order "gave the Attorney General's Office authority to independently prosecute this criminal case . . . in violation of the Texas Constitution." Relying on *Stephens*, appellant specifically argues that "the Texas Constitution contains no provision that expressly permits the Attorney General to prosecute penal code violations in district courts." According to appellant, "because [t]he Attorney General's Office was without constitutional authority to *initiate* the prosecution in this case, and thus without standing, the [trial court] lacked subject matter jurisdiction to hear the case."

Appellant's argument is premised on the notion that the Attorney General independently and unilaterally initiated prosecution of his case, like what happened in *Stephens*. In *Stephens*, the Texas Rangers presented findings regarding their investigation of Stephens for election-law violations to the Jefferson County District Attorney (JCDA). *See* 663 S.W.3d at 47. The JCDA declined to prosecute and referred

9

the Texas Rangers to the Attorney General, who presented the case to a grand jury pursuant to Texas Election Code Section 273.021. *See id.* (applying TEX. ELEC. CODE § 273.021 (purporting to grant the Attorney General jurisdiction to prosecute election law violations)). The Texas Court of Criminal Appeals explained that the power to prosecute was constitutionally conferred within the judicial department to district and county attorneys. *See id.* The Court held that the Attorney General could not unilaterally exercise a prosecution power that was assigned to the judicial department but could participate in criminal litigation if the relevant district or county attorney consents. *See id.* at 50–57 (concluding that "the grant of prosecutorial authority in section 273.021 of the Texas Election Code violates article II, section 1 of the Texas Constitution, the Separation of Powers Clause").

Unlike *Stephens*, the elected district attorney in this case sought to recuse herself and consented to the Attorney General's appointment as district attorney pro tem to "make all decisions pertaining to" "all criminal matters concerning the complaints and allegations regarding [appellant]" pursuant to Texas Code of Criminal Procedure Article 2.07. *See Wood v. State*, 693 S.W.3d 308, 326 (Tex. Crim. App. 2024) (finding same). Article 2.07, which has since been repealed but applied at the time the Attorney General was appointed in this case, provided that:

> (a)    Whenever an attorney for the state is disqualified to act in any case or proceeding, is absent from the county or district, or is otherwise unable to perform the duties of the attorney's office, or in any instance where there is no attorney for the state, the judge of the court in which the attorney represents the state may appoint, from any county or district, an attorney for the state or may appoint an assistant attorney general to perform the duties of the office during the absence or disqualification of the attorney for the state.

10

. . . .

(b-1)   An attorney for the state who is not disqualified to act may request the court to permit the attorney's recusal in a case for good cause, and on approval by the court, the attorney is disqualified.

. . . .

(d)     In this article, "attorney for the state" means a county attorney with criminal jurisdiction, a district attorney, or a criminal district attorney.

Act of May 22, 2019, 86th Leg., R.S., ch. 580 (S.B. 341), § 1, 2019 Tex. Gen Laws 1619, 1619–20 (former TEX. CODE CRIM. PROC. art. 2.07), *repealed* by Act of May 19, 2023, 88th Leg., R.S., ch. 765 (H.B. 4504), § 3.001(1), 2023 Tex. Gen Laws 1837, 1974.[3] In *Woods*, the Texas Court of Criminal Appeals held that "any attorney who acts as an attorney *pro tem* stands in the shoes of the district or county attorney being replaced." *Wood*, 693 S.W.3d at 326. The Court further held that an "appointed attorney *pro tem* acts not with any authority he has by virtue of his original employment (e.g., in the Attorney General's Office) but uses the elected district or county attorney's authority conferred by the appointment." *Id.*

Here, the Attorney General used the elected district attorney's constitutional authority, as conferred upon it by the trial court's appointment, to lawfully initiate criminal proceedings against appellant. *See id.*; *Ex parte Sutton*, No. 12-24-00162-CR, 2024 WL 3532944, at *4 (Tex. App.—Tyler July 24, 2024, no pet.) (mem. op., not designated for publication) ("[A]ssistant attorney generals are not acting under the authority of the

---

[3] Article 2A.104 has replaced former Article 2.07, effective January 1, 2025. *See* TEX. CODE CRIM. PROC. art. 2A.104; *see also* Act of May 19, 2023, 88th Leg., R.S., ch. 765 (H.B. 4504), § 1.001, 2023 Tex. Gen Laws 1837, 1851.

11

Attorney General's [O]ffice when acting as attorney pro tem; they are acting under the District Attorney's authority. As such, the Attorney General is not executing judicial branch authority in its own right, and Article 2.07 does not violate the separation of powers."). Appellant does not complain that the Attorney General's appointment was not otherwise authorized by Article 2.07. Moreover, appellant has cited no authority for the proposition that a trial court lacks subject matter jurisdiction over a criminal case when the Attorney General initiates criminal proceedings pursuant to a lawful appointment, and we have found none. *See Ex parte Moss*, 446 S.W.3d at 788. Thus, we conclude the Attorney General's appointment as district attorney pro tem did not violate the separation of powers doctrine. *See Wood*, 693 S.W.3d at 326; *Stephens*, 663 S.W.3d at 49–50. Accordingly, we overrule appellant's first issue.

### III. CONSTITUTIONAL CHALLENGE

In his second issue, appellant argues that Texas Penal Code Section 16.02 is unconstitutional on its face and as applied to his case because it is void for vagueness. We address each constitutional challenge in turn.

### A. Standard of Review and Applicable Law

The constitutionality of a statute is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). "A party may challenge a statute's constitutionality on its face or as applied to that party." *Gutierrez v. State*, 721 S.W.3d 639, 648 (Tex. App.—Corpus Christi–Edinburg 2025, pet. ref'd) (citing *Estes v. State*, 546 S.W.3d 691, 697–98 (Tex. Crim. App. 2018) (discussing facial and as-applied constitutional challenges)). A party bringing a "facial" constitutional challenge must show

12

the statute "operates unconstitutionally in all of its potential applications." *Estes*, 546 S.W.3d at 697–98; *see United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). "Conversely, in an as-applied challenge, the claimant 'concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances.'" *Estes*, 546 S.W.3d at 698 (quoting *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011)). "Under either type of challenge, the reviewing court begins with the presumption that the Legislature acted both rationally and validly in enacting the law under review." *Id.*; *Faust v. State*, 491 S.W.3d 733, 743–44 (Tex. Crim. App. 2015); *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).

"It is a basic principle of due process that a statute is void for vagueness if its prohibitions are not clearly defined." *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972)). "The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement." *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). "Although a statute is not impermissibly vague because it fails to define words or phrases, it is invalid if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited." *Id.* (first citing *Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988); and then

13

citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)); *see also Kolender*, 461 U.S. at 358 ("Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'"). We scrutinize criminal statutes more strictly than civil statutes because the consequences of imprecision are more severe. *Mills v. Fletcher*, 229 S.W.3d 765, 770 (Tex. App.—San Antonio 2007, no pet.); *Zaborac v. Tex. Dep't of Pub. Safety*, 168 S.W.3d 222, 225 (Tex. App.—Fort Worth 2005, no pet.).

## B.    Preservation

We first assess whether appellant properly preserved his challenges. "[A] challenge to the constitutionality of a statute is a forfeitable right and must be preserved in the trial court during or after trial." *Cooper v. State*, 673 S.W.3d 724, 749 (Tex. App.—Fort Worth 2023, no pet.). Both facial and as-applied challenges must be raised in the trial court to preserve error. *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014); *see Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (noting a facial challenge to the constitutionality of a statute is a forfeitable right and may be lost by the "failure to insist upon it by objection, request, motion, or some other behavior"); *Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008) (noting the "well-established requirement that appellant must preserve an 'as applied' constitutional challenge by raising it at trial"); *see also* Tex. R. App. P. 33.1 (regarding error preservation).

A pretrial writ of habeas corpus "can be used to bring a facial challenge to the constitutionality of a statute that defines the offense but may not be used to advance an 'as applied' challenge." *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010).

14

Similarly, a pretrial motion to quash an indictment "may be used only for a facial challenge to the constitutionality of a statute." *State v. Rosseau*, 398 S.W.3d 769, 779 (Tex. App.—San Antonio 2011), *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013) (citing *Sheldon v. State*, 100 S.W.3d 497, 505 (Tex. App.—Austin 2003, pet. ref'd) (op. on reh'g) (holding that a motion to quash indictment may be used only for facial challenges to statute's constitutionality, not for an "as applied" challenge which may be only brought in the trial court through a post-conviction motion)). Here, the record demonstrates that appellant did not file any pretrial writ of habeas corpus. While appellant did file a pretrial motion to quash by which he alleged the indictment failed to allege an offense, he did not assert a facial challenge to the constitutionality of Section 16.02 or assert that said statute was void for vagueness. Furthermore, the trial court's order denying appellant's motion to quash stated that it "considered by submission [appellant's] Motion to Quash Indictment" and it "determined that the Motion should be DENIED."[4]

However, appellant's ninth ground in his motion for new trial asserted that "[t]he trial judge should have declared the provisions of the Unlawful Intercept Act under Texas Penal Code [Section] 16.02 void for vagueness, as they defy obedience *by any person* of normal ability to understand what they are being charged with" (emphasis added). We construe this ground as raising a facial challenge to Section 16.02, and not an as-applied challenge. *See Reynolds*, 423 S.W.3d at 383; *see also Fine*, 330 S.W.3d at 910 ("A litigant raising only an 'as applied' challenge concedes the general constitutionality of the statute,

---

[4] If there was a hearing on appellant's motion to quash, a transcript of the hearing is not in the appellate record. However, we observe that nothing in the record indicates the trial court held a hearing on appellant's motion to quash.

15

but asserts that the statute is unconstitutional as applied to his particular facts and circumstances."); *Sheldon*, 100 S.W.3d at 505. Because there is nothing in the record demonstrating that appellant raised an as-applied constitutional challenge to Section 16.02 to the trial court, appellant has failed to preserve that issue and we overrule it. *See* Tex. R. App. P. 33.1; *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Flores*, 245 S.W.3d at 437 n.14; *Ortiz v. State*, No. 13-22-00612-CR, 2024 WL 1451222, at *2 (Tex. App.—Corpus Christi–Edinburg Apr. 4, 2024, pet. ref'd) (mem. op., not designated for publication) (overruling the appellant's as-applied constitutional challenge to Texas Penal Code Section 21.02 as unpreserved because he failed to present it to the trial court).

## C.    Analysis

We now address appellant's facial challenge. On appeal, appellant argues:

> The terms "intercept" and "interception device" assigned by Article 18A.001 of the Texas Code of Criminal Procedure do not include the use of a telephone to acquire the contents of a wire, oral, or electronic communication and, therefore, renders Section 16.02 of the Texas Penal Code unconstitutional because it is unduly vague and thus violates the Due Process Clause of the Texas Constitution. In fact, Section 16.02, when read in conjunction with the meaning of the terms assigned by Tex[as] Code [of] Crim[inal] Proc[edure Article] 18A.001(13) and (14) fails to explicitly state and define what conduct is prohibited and punishable under these statutes, as well as fair notice of the same.

Appellant further argues that Section 16.02 "is vague and ambiguous in all of its potential applications to persons who are not law enforcement or investigative personnel." Appellant also argues that "[t]he statutory construction[s] of Texas Penal Code [Section] 16.02 and Texas Code of Criminal Procedure [Article] 18A.001(13) and (14) are facially

16

unconstitutional because they lack sufficient definiteness so that ordinary people can understand what conduct is prohibited and are legislated in a manner that permits arbitrary and discriminatory enforcement."

We disagree. "In a facial challenge to a statute's constitutionality, courts consider the statute only as it is written, rather than how it operates in practice." *Fine*, 330 S.W.3d at 908. "A provision is vague if it has an uncertain breadth of meaning." *Ochoa v. State*, 355 S.W.3d 48, 55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Vagueness*, BLACK'S LAW DICTIONARY (9th ed. 2009)). Section 16.02 provides seven different ways in which a person can commit an offense, *see* TEX. PENAL CODE § 16.02(b)(1)–(5), (d)(1)–(2), including, as pertinent here, if the person "intentionally intercepts, endeavors to intercept, or procures another person to intercept or endeavor to intercept a wire, oral, or electronic communication." *See id.* § 16.02(b)(1). Appellant does not specifically complain of any of the seven ways in which a person can commit an offense under Section 16.02. Instead, appellant complains of the terms "intercept" and "interception device" as used by the statute.

Section 16.02(a) provides that the terms "intercept" and "interception device," among many others, "have the meanings assigned by Article 18A.001, Code of Criminal Procedure." *See id.* § 16.02(a); TEX. CODE. CRIM. PROC. art. 18A.001 (13)–(14). Article 18A.001 defines "intercept" as "the aural or other acquisition of the contents of a wire, oral, or electronic communication through the use of an interception device." TEX. CODE. CRIM. PROC. art. 18A.001(13). "Wire communication" is defined as

> an aural transfer made wholly or partly through the use of facilities for the transmission of communications by the aid of wire, cable, or other similar

connection between the point of origin and the point of reception, including the use of the connection in a switching station, if those facilities are provided or operated by a person authorized to provide or operate the facilities for the transmission of communications as a communication common carrier.

*Id.* art. 18A.001(24). "Oral communication" is defined as "a communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation" and "does not include an electronic communication." *Id.* art. 18A.001(19). "Electronic communication" is defined as "a transfer of any signs, signals, writing, images, sounds, data, or intelligence transmitted wholly or partly by a wire, radio, electromagnetic, photoelectronic, or photo-optical system." *Id.* art. 18A.001(10). However, that term does not include "a wire or oral communication," "a communication made through a tone-only paging device," or "a communication from a tracking device." *Id.* art. 18A.001(10)(A)–(C). "Contents," when used with respect to a wire, oral, or electronic communication, "includes any information concerning the substance, purport, or meaning of that communication." *Id.* art. 18A.001(6).

Article 18A.001 also defines "interception device" as "an electronic, mechanical, or other device that may be used for the nonconsensual interception of wire, oral, or electronic communications." *Id.* art. 18A.001(14). However, that term, in relevant part, "does not include a telephone or telegraph instrument, . . . if the instrument . . . is":

(A)     provided to a subscriber or user by a provider of a wire or electronic communications service in the ordinary course of the service provider's business and used by the subscriber or user in the ordinary course of the subscriber's or user's business;

(B)     provided by a subscriber or user for connection to the facilities of a wire or electronic communications service for use in the ordinary course of the subscriber's or user's business;

(C)    used by a communication common carrier in the ordinary course of the carrier's business; or

(D)    used by an investigative or law enforcement officer in the ordinary course of the officer's duties.

*Id.* art. 18A.001(14)(A)–(D).

As demonstrated above, "interception device" does not include a "telephone or telegraph instrument" under certain circumstances specifically defined by the statute. *See id.* Furthermore, we find none of the terms appellant complains of to be vaguely defined. *See Ochoa*, 355 S.W.3d at 55. Thus, after construing Section 16.02 in conjunction with the defined terms that appellant complains of, we cannot conclude that it is so vague that it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. *See Holcombe*, 187 S.W.3d at 499. We overrule appellant's second issue.

## IV.    VIOLATION OF ARTICLE 38.05

In his third issue, appellant complains that the trial court violated Article 38.05 of the Texas Code of Criminal Procedure.

## A.    Standard of Review and Applicable Law

Article 38.05 generally prohibits the trial court from expressing its thoughts on a case to the jury:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. art. 38.05. "When a litigant contends that the trial judge has

19

shirked her duty by openly convey[ing] to the jury her opinion of the case, the litigant has necessarily alleged than an alarming perversion of [the trial judge's role as neutral arbiter] has taken place." *Proenza v. State*, 541 S.W.3d 786, 799 (Tex. Crim. App. 2017) (discussing Article 38.05). Violations of Article 38.05 may be raised for the first time on appeal. *See id.* at 798–99. "Whether the trial court violated Article 38.05 is a question of law, which we review de novo." *Costilla v. State*, 650 S.W.3d 201, 218 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing *Simon v. State*, 203 S.W.3d 581, 590–92 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (stating appellate court's first inquiry under the statute is deciding whether challenged remarks constitute comment on weight of evidence, making an independent review of record, and concluding whether trial court erred)).

Violations of Article 38.05 are subject to the standard of harm for non-constitutional error. *See Proenza*, 541 S.W.3d at 801. Under that standard, we must disregard the violations unless they "affect[ed] substantial rights." TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005).

## B. Analysis

In his brief, appellant specifically complains of an alleged Article 38.05 violation committed by the Honorable Russell Lloyd, the judge who presided over the second trial of appellant's case which resulted in his two convictions. In particular, appellant argues that Judge Lloyd "interjected himself into the proceedings by alerting the prosecution to

20

an error in the date [of] the divorce of [a]ppellant and . . .Chanda . . . became final." According to appellant, "[a]fter informing the prosecution of the error in this evidence, which occurred during [Chanda]'s testimony, Judge [Lloyd] advised the prosecution to 'clear it up.'" Appellant also asserts that he moved for a mistrial, which was denied.

In presenting this issue, appellant cites an exhibit that appellant attached to his "Special Plea in Bar," filed prior to his second trial. The exhibit is a partial trial transcript, six pages in length, which appears to contain the complained-of incident. The State notes in its brief that this exhibit "is an excerpt of the transcript of [a]ppellant's *previous trial* in 2022 that resulted in a mistrial by a hung jury." The State further argues that "[a]ppellant erroneously attributes Judge Hardin's statements to Judge Lloyd."

The record demonstrates that appellant's first trial was presided by Judge Hardin, and his second trial was presided by Judge Lloyd. The appellate record before us does not contain any complete transcript of appellant's first trial, so we are unable to verify with certainty the State's claim that the referenced exhibit was an excerpt of the transcript from appellant's first trial. However, we note that in his "Special Plea in Bar," appellant complained, among other things, that Judge Hardin violated Article 38.05 by "interject[ing] himself into the proceedings in a nonjudicial capacity, by advising the State to correct a deficiency in the State's case[-]in[-]chief." In addition, out of an abundance of caution and in our sole discretion, we have reviewed the complete transcripts of appellant's second trial, including Chanda's testimony, and have found no incident similar to the one that appellant complains of in this issue.[5] Under these circumstances, we find that the record

---

[5] While appellant moved for mistrial during Chanda's testimony at the second trial, the basis of the

does not demonstrate that Judge Lloyd committed any violation of Article 38.05 as alleged by appellant. *See Costilla*, 650 S.W.3d at 218. We overrule appellant's third issue.

## V.    LEGAL SUFFICIENCY

In his fourth issue, appellant argues the evidence supporting his conviction was legally insufficient.

## A.    Standard of Review and Applicable Law

To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a legal sufficiency review, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021). We defer to the jury's role as the factfinder, which includes "resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (quoting *Hooper*

---

motion was due to alleged violations of the order granting appellant's motion in limine, not comments uttered by Judge Lloyd.

22

*v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007)). We consider "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray*, 457 S.W.3d at 448 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

We measure the sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327 (quoting *Malik*, 953 S.W.2d at 240). "'As authorized by the indictment' means the statutory elements of the offense as modified by the charging instrument." *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018) (quoting *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).

The hypothetically correct jury charge in this case would instruct the jury to find appellant guilty if he intentionally intercepted or endeavored to intercept a wire, oral, or electronic communication. *See* TEX. PENAL CODE § 16.02(b)(1). As previously discussed, Section 16.02 specifically incorporates the definitions of several terms found in Article 18A.001 of the Texas Code of Criminal Procedure, including "intercept," "interception," and "oral communication." [6] *See id.* § 16.02(a)(1); TEX. CODE CRIM. PROC. art.

---

[6] We note that the Texas Court of Criminal Appeals has held that the definition of "oral

18A.001(13), (14), (19). A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. TEX. PENAL CODE § 6.03(a). Intent may generally be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

## B.    Analysis

Appellant suggests that the evidence adduced at trial established that "[t]here was never any intercept" and "no interception device." We disagree. "Intercept" means "the aural or other acquisition of the contents of a . . . oral . . . communication through the use of an interception device." TEX. CODE CRIM. PROC. art. 18A.001(13); *see also* TEX. PENAL CODE § 16.02(a)(1). At trial, Chanda testified that her voicemail could be accessed remotely but required her four-digit passcode. She also stated that appellant never asked for permission to access her voicemail, and that she never gave appellant permission to check or access her voicemail during their marriage or after their divorce. Chanda also testified that appellant never asked for her voicemail passcode nor did she give it to him. Other evidence demonstrated that appellant sent text messages to Chanda that referenced information from her voicemails. More importantly, the record contains an audio recording in which appellant admitted that he accessed Chanda's voicemails and knew of her passcode.

We first find that the jury could have reasonably concluded that Chanda's voicemails were oral communications as defined by the statute. *See* TEX. CODE CRIM.

---

communication" incorporates the Fourth Amendment's legitimate-expectation-of-privacy-standard. *Long v. State*, 535 S.W.3d 511, 521 (Tex. Crim. App. 2017).

24

PROC. art. 18A.001(19); TEX. PENAL CODE § 16.02(a)(1). Next, the jury could have reasonably concluded that appellant acquired the contents of Chanda's voicemails with an interception device: his personal cell phone. *See* TEX. CODE CRIM. PROC. art. 18A.001(14); TEX. PENAL CODE § 16.02(a)(1). "Interception device" means "an electronic, mechanical, or other device that may be used for the nonconsensual interception of . . . oral . . . communications." TEX. CODE CRIM. PROC. art. 18A.001(14); TEX. PENAL CODE § 16.02(a)(1). It is true that the definition of "interception device" excludes "a telephone or telegraph instrument" under four specific circumstances. *See* TEX. CODE CRIM. PROC. art. 18A.001(14)(A)–(D). Appellant does not argue on appeal that the evidence or testimony established any of those four specific circumstances. Furthermore, we conclude that none of the evidence or testimony adduced at trial established any of the four specific circumstances required to trigger the exclusion of a "telephone or telegraph instrument" from constituting an "interception device." *See id.* Finally, the jury could have reasonably concluded, based on Chanda's testimony, that appellant's access to her voicemails was nonconsensual. *See id.* art. 18A.001(14); TEX. PENAL CODE § 16.02(a)(1); *see also Lasiter v. State*, 283 S.W.3d 909, 920 (Tex. App.—Beaumont 2009, pet. ref'd) ("In general, juries are free to believe or disbelieve all or part of a witness's testimony."). After reviewing the evidence in the light most favorable to the verdicts, we conclude that appellant's convictions under Penal Code Section 16.02 are supported by legally sufficient evidence.[7] *See Hammack*, 622 S.W.3d at 914. We

---

[7] Appellant also argues that the evidence "showed that [appellant] accessed a voice[]mail system of stored communications and retrieved messages relevant to the care of their children and ultimately to their divorce" without further elaboration, nor citations to case authorities. This argument appears to

25

overrule appellant's fourth issue.

## VI.   QUASHING OF SUBPOENAS

In his fifth issue, appellant argues that the trial court abused its discretion "by refusing to allow appellate counsel to introduce testimony in support of claims that warrant a new trial." Specifically, appellant asserts that the trial court "refused to allow [Wharton] County Judge Phillip Spenrath and trial counsel . . . to be subpoenaed for testimony at the hearing." Relatedly, appellant argues in his sixth issue that he was denied his right to due process at the hearing on his motion for new trial because the trial court "den[ied] him process upon these relevant witnesses and thus his right to establish a meritorious ground for a new trial." We address these issues together.

### A.   Standard of Review and Applicable Law

Texas Code of Criminal Procedure Article 24.01 provides that a subpoena may summon one or more persons to appear "before a court to testify in a criminal action at a specified term of the court or on a specified day" or "on a specified day" "in any other proceeding in which the person's testimony may be required in accordance with this code." TEX. CODE CRIM. PROC. art. 24.01(a)(1)–(2). Article 24.02 regards subpoenas duces tecum and provides that, "If a witness ha[s] in his possession any instrument of writing or other thing desired as evidence, the subpoena may specify such evidence and direct that the witness bring the same with him and produce it in court." *Id.* art. 24.02.

---

reference a similar argument appellant raised in his unpreserved as-applied constitutional challenge, which was much more detailed and included case authorities interpreting the federal wiretap statute as requiring a contemporaneous interception. In any event, we conclude appellant has waived this argument within his fourth issue through inadequate briefing. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

26

Finally, Article 24.03 sets out the necessary application procedure for obtaining a subpoena in a felony case from the clerk. *See id.* art. 24.03.

We review a trial court's grant or denial of a motion to quash a subpoena for an abuse of discretion. *See Torres v. State*, 424 S.W.3d 245, 261 (Tex. App.—Houston [14th Dist.] 2014, pet ref'd). The right to issue subpoenas and compel testimony stems from the Sixth Amendment. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ."); TEX. CONST. art. I, § 10; *see also Coleman v. State*, 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998). "The right of compulsory process is not absolute; a defendant carries the burden of a plausible showing by sworn or agreed facts that the testimony would be material and favorable." *Torres*, 424 S.W.3d at 262 (first citing *Coleman*, 966 S.W.2d at 528; and then citing *Drew v. State*, 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987)). Relatedly, a subpoena duces tecum is not to be used as a discovery weapon but as an aid to discovery based upon a showing of materiality and relevance. *Luvano v. State*, 183 S.W.3d 918, 924 (Tex. App.—Eastland 2006, no pet.).

"Materiality requires more than the mere possibility that the information might help the defense or affect the outcome of the trial." *Id.* at 922 (citing *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). "Under the Compulsory Process Clause, evidence is material 'only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact.'" *Freeman v. State*, 413 S.W.3d 198, 205–06 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 874 (1982)). A belief that evidence may be able to support the

27

defense's case does not constitute materiality. *See Torres*, 424 S.W.3d at 262 ("Absent evidence of favorable and material testimony, a belief that a witness may be able to support the defense's case does not create materiality." (citing *Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.—Fort Worth 2006, pet. ref'd))).

**B.      Analysis**

In his motion for new trial, appellant asserted nine grounds, including in relevant part:

> 5)      The County Judge, who is the spouse of the complainant Chanda . . . [,] the ex-wife of [appellant,] . . . attempted to improperly influence the jurors through deliberate intimidation by attending the voir dire, placing himself in a position to intimidate the venire panel, and being given special treatment by . . . Judge Lloyd, before the venire panel . . . . This placed a thumb upon the scales of justice and denied the defendant due process and a fair trial under the Sixth and Fourteenth Amendment . . . .
>
>      . . . .
>
> 8)      The clear bias of . . . [J]udge Lloyd against the defense and for the prosecution, indicated by permitting [Spenrath], who voted on paying the salary of the visiting judge, to ignore court rules on cell phones, apparently communicate with the prosecution and his wife, the prosecution star witness, Chanda . . . , and to permit . . . Spenrath to intimidate jurors during the selection . . . .

Appellant attached to his motion three affidavits authored by appellant, his fiancée Meg Bohn, and his trial counsel. In his affidavit, appellant stated the following:

> My ex[-]wife Chanda['s] current husband [Spenrath] is the Wharton County Judge. During the jury selection he sat in the back corner of the room while facing the Entrance/Exit door from the Judge[']s desk[. H]e was positioned in the corner against the wall taking notes, on his cell phone monitoring the room during the entire jury selection. I believe that he was sending notes about the jurors to the prosecution[']s team along with seeing him interact with conversation during one of the breaks with multiple jurors. From the start of the trial to the completion of the trial, [Spenrath] sat on the front row

28

in the front pew behind the prosecutor[']s desk about six to maybe 7 f[ee]t which positioned him directly in front of the jury box, where every juror entered, and exited the jury box. He would stand as they entered, and as they exited and stare[] each juror down in attempt to intimidate them, based on his elected position as the county judge, as well as an attempt to help [Chanda] during this trial. He also sat in that same position, taking notes on his cell phone, and a notepad, as well as staring at [Judge Lloyd] throughout the entire trial, in an attempt to intimidate [Judge Lloyd] because of his position.

. . . .

Throughout the entire trial, [Spenrath] was sending text messages during the jury selection and it appeared that the texts were directed to the prosecution and [Judge Lloyd], and to [Chanda], the complainant, when she took the stand.

. . . .

I believe that I was denied a fair trial. I believe this was due to a close personal and conflicted professional relationship between Judge Lloyd, who tried our case the second time, and [Spenrath,] the husband of the complainant, my ex[-]wife, Chanda, who married the County Judge. [Spenrath] was the one who[] paid the visiting judge, Judge Lloyd. [Spenrath] clearly tried to exert an outside influence on the potential and selected jurors throughout the trial. He also clearly was working hand in glove with the prosecution, even after the local [district attorney] recused themselves.

Similarly, Bohn stated in her affidavit, in pertinent part, that:

During the trial[, Spenrath] sat in the courtroom directly in front of the jury. He was allowed to have his cell phone. He was allowed to bypass the security scan. He was allowed to enter the side room while the jury was out. He was there as the husband to the witness/victim not as the Wharton County Judge and therefore should have not been allowed to have his cell phone and should have had to follow all the procedures everyone else had to. I saw him checking his phone during the trial, and it appeared he was texting the prosecution. I saw him discussing his notes with the prosecution.

Appellant's trial counsel attested, in relevant part, that:

[Spenrath] attended the [v]oir [d]ire proceedings of the second/retrial and positioned himself behind the venire. He was not a member of the [v]enire.

. . . .

> Once the trial started and for every phase of the trial, [Spenrath] sat in a position as close to the jury panel as possible. [Spenrath] chose a position so that every time the jury entered or exited the jury box, the jury was forced to look at him as they had no other choice but to look directly at him.

The trial court set appellant's motion for new trial for a hearing. Appellant subsequently served applications for subpoenas to appellant's trial counsel and Spenrath by which appellant sought their testimony. *See* TEX. CODE CRIM. PROC. art. 24.01. Appellant also served a subpoena duces tecum on Spenrath, directing him to bring a copy of his "phone records for the cell phone [he] carried during the trial of [appellant] to include all in-coming and outgoing calls as well as texts." *See id.* art. 24.02. In addition, appellant served a subpoena duces tecum on appellant's trial counsel.[8] The State subsequently filed a "Motion to Quash Subpoena Duces Tecum," arguing in part that appellant made no showing that the requested documents he sought from Spenrath were material or favorable to his defense. The State also filed a response to appellant's motion for new trial. Appellant filed a response to the State's motion to quash, arguing that the State "ha[d] no standing" to file the motion and that his motion of new trial was supported by affidavits "alleging specific conduct during the trial dates that involved use of the phone to communicate improperly with the judge and others involved in the trial."

At the motion for new trial hearing, the trial court first heard arguments by the parties concerning the State's motion to quash appellant's subpoena duces tecum of

---

[8] We note that this subpoena duces tecum did not specify or direct what evidence appellant's trial counsel was to produce.

30

Spenrath and granted the motion. The trial court then addressed appellant's motion for new trial and heard arguments by the parties concerning that motion. The parties presented no additional evidence or testimony at the hearing. However, the trial court referenced the affidavits appellant attached to his motion for new trial during the hearing. At the end of the hearing, the trial court denied appellant's motion for new trial and memorialized its ruling in a written order that same day.

Turning to the fifth and sixth issues, we note that the record demonstrates that trial court only quashed the subpoena duces tecum directing Spenrath to provide cell phone records. The State did not move to quash appellant's subpoenas seeking testimony from Spenrath or appellant's trial counsel, the trial court made no ruling pertaining to those subpoenas, and nothing in the record indicates Spenrath or appellant's trial counsel were prohibited from testifying. Thus, we overrule appellant's fifth and sixth issues to the extent he complains the trial court erred when it "refused to allow" Spenrath and his trial counsel "to be subpoenaed for testimony at the hearing" for his motion for new trial. *See* TEX. R. APP. P. 33.1(a)(1) (providing generally that "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that . . . the trial court: (A) ruled on the request, objection, or motion, either expressly or implicitly; or (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal").

In his brief, appellant argues that "the Attorney General's Office lacked standing to seek to quash the subpoena duces tecum for [his trial counsel] and [Spenrath]." According to appellant, the State, as "represented by attorneys from the Texas Attorney General's Office, lacked standing . . . because the appointment of these attorneys violated the

31

Texas separation of powers doctrine." Appellant did not assert separation of powers as a basis for his contention that the State lacked standing to file its motion to quash in his response to that motion or at the hearing on his motion for new trial. *See* TEX. R. APP. P. 33.1; *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). Even assuming appellant's argument is preserved, we again note that the State's motion to quash challenged only appellant's subpoena duces tecum pertaining to Spenrath, not appellant's trial counsel. More importantly, we have already rejected appellant's contention that the appointment of the Texas Attorney General's Office as district attorney pro tem violated the separation of powers doctrine. We likewise reject this contention as a basis for appellant's assertion that the State lacked standing to file its motion to quash.

To the extent appellant complains about the trial court's grant of the State's motion to quash appellant's subpoena duces tecum pertaining to Spenrath's cell phone records, we note that appellant had the burden to show that the requested cell phone records were material to his motion for new trial once the State's motion to quash was filed. *See Luvano*, 183 S.W.3d at 924; *see also Torres*, 424 S.W.3d at 262. The only evidence in the record pertaining to this required showing was isolated statements by appellant and Bohn in their respective affidavits. Specifically, appellant stated in his affidavit that he saw Spenrath "on his cell phone monitoring the room during jury selection" and that he "believe[d] that [Spenrath] was sending notes about the jurors to the prosecution[']s team." Similarly, Bohn stated in her affidavit that she saw Spenrath "checking his phone

32

during the trial, and it appeared he was texting the prosecution." At most, these statements constitute mere speculation that the complained-of conduct occurred and therefore are not based on personal knowledge. *See Hooper*, 214 S.W.3d at 16 ("Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented."); *Fairow v. State*, 943 S.W.2d 895, 902 (Tex. Crim. App. 1997) (Baird, J., concurring) ("Personal knowledge is required because testimony without personal knowledge is pure speculation and conjecture."); *see also Hartin v. State*, No. 09-07-00547-CR, 2009 WL 1076799, at *2 (Tex. App.—Beaumont April 22, 2009, pet dism'd.) (mem. op., not designated for publication) ("Opinion testimony that is conclusory or speculative is not relevant evidence [.]" (quoting *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004))).

Furthermore, appellant has provided no authorities showing he may be entitled to a new trial solely on alleged cell phone communications between the prosecution and a non-witness in a case during trial. *See* TEX. R. APP. P. 38.1(i). And it is not the job of an appellate court to make appellant's argument and analysis for him. *See Zhang v. Cap. Plastic & Bags, Inc.*, 587 S.W.3d 82, 90 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("It is not [the appellate court's] duty to review the record, research the law, and then fashion a legal argument for an appellant when he has failed to do so."); *Mays v. State*, No. 05-02-01376-CR, 2003 WL 22405169, at *5 (Tex. App.—Dallas Oct. 22, 2003 pet. ref'd) (mem. op., not designated for publication) ("Our job as an appellate court is to consider the arguments and analysis of counsel, not to make appellant's argument and analysis for him."). We conclude appellant failed to demonstrate a reasonable likelihood

that Spenrath's cell phone records could have affected the trial court's ruling on his motion for new trial. *See Freeman*, 413 S.W.3d at 205–06; *Luvano*, 183 S.W.3d at 922; *see also Torres*, 424 S.W.3d at 262. Accordingly, the trial court did not err or deny appellant due process when it granted the State's motion to quash appellant's subpoena duces tecum. We overrule appellant's fifth and sixth issues.

### VII.    MODIFICATION OF JUDGMENTS

In our review of the record, we have discovered that appellant's judgments of conviction for unlawful interception both contain a typographical error. Specifically, the judgments for Count One and Count Two state, "This Sentence Shall Run: Currently." When appellant's sentences were pronounced in open court, the trial court was silent regarding whether those sentences were to run concurrently or consecutively. "It is observed that where the sentence is silent as to any order of cumulation of sentences or there is an improper order of cumulation the sentence will automatically run concurrently with any other outstanding sentence." *Ex parte Hernandez*, 758 S.W.2d 594, 596 (Tex. Crim. App. 1988) (en banc); *see also* TEX. CODE CRIM. PROC. art. 42.08.

This Court may modify the trial court's judgments to make the record speak the truth when it has the necessary data and information to do so. *See* TEX. R. APP. P. 43.2(b). Because we have the necessary information, we modify appellant's judgments of conviction for Count One and Count Two to state, "This Sentence Shall Run: Concurrently." *See id.*; *see also* TEX. CODE CRIM. PROC. art. 42.08; *Ex parte Hernandez*, 758 S.W.2d at 596; *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

34

## VIII. Conclusion

We affirm the trial court's judgments of conviction as modified.

CLARISSA SILVA
Justice

Publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
16th day of March, 2026.